S. W. SAYLOR, Appellant, v. G. W. PARSONS AND PARSONS, RICH & COMPANY.

Negligence:    ATTEMPT AT RESCUE.   One who seeks to rescue another
1    from imminent danger, thereby imperiling his own life, is
     not as a matter of law guilty of contributory negligence.

Master and Servant: · NEGLIGENCE.   Where an employe rescues a
2    fellow workman from a position of peril and is injured in so
     doing, he cannot recover from the master for. such injury
     without establishing negligence on the part of the master
     respecting himself or co-laborer.

*Appeal from Jasper District Court.*—HON. A. R. DEWEY, Judge.

WEDNESDAY, FEBRUARY 10, 1904.

ACTION for damages. The plaintiff appeals from a judgment on a directed verdict.—*Affirmed.*

*E. J. Salmon, N. T. Guernsey* and *Graham & Morgan* for appellant:

*W. O. McElroy* and *C. O. McLain* for appellees.

LADD, J.—The plaintiff had been employed by Parsons, Rich & Co. as a blacksmith. That firm had concluded to enlarge its factory, and on the 11th day of November, 1898, directed plaintiff, with others, to assist in removing a one-story addition thereto. This addition was about twenty-four feet square, with brick walls running against, not into, the main building. After the roof had been removed they proceeded to take down the north and east walls. The south wall was to be extended as a part of a larger building. After a portion of the east wall had been removed, the other employes went to work elsewhere, but plaintiff continued until the brick had been taken away within a few feet of the ground. He then took out a window frame, and in return-

ing through a doorway in the east wall after setting it aside, noticed that Parsons, who had been overseeing the work, and also working with the men, bent over next to the north wall undermining it at the bottom with a five-foot iron bar. He was but twelve or fourteen feet distant, and the wall appeared to be toppling over toward him. Believing Parsons to be in imminent danger, plaintiff seized a piece of scantling two inches by four or six inches and about seven feet long, rushed over and threw it against the wall about two feet from the top, and over a window, to prevent the wall from falling. Parsons immediately rose up and withdrew without serious injury. But the brick against which plaintiff's prop had been placed gave way, letting plaintiff forward, and he was caught by the falling wall, and his leg so crushed that amputation was necessary. The wall was then about ten feet high at one end and eight feet at the other, with an aperture for a window about two and one-half feet wide and five feet high. Parsons was about three or four feet west of this window. Subsequently, in expressing his sympathy with plaintiff, he said to him that but for his coming as he did, he (Parsons) might have been crushed and killed. Upon the conclusion of the evidence in behalf of plaintiff tending to establish facts as stated, the jury, on motion, was directed to return a verdict for the defendants.

I. A person who seeks to rescue another from imminent danger, thereby imperiling his own life, is not necessarily guilty of contributory negligence. "The law has so high a 1. NEGLIGENCE: regard for human life that it will not impute attempt at negligence in an effort to preserve it, unless rescue. made under such circumstances as to constitute rashness in the judgment of prudent persons." *Eckert v. Ry.*, 43 N. Y. 502 (3 Am. Rep. 721.) In *Cottrill v. Ry.*, 47 Wis. 634 (3 N. W. Rep. 376, 32 Am. Rep. 796) an engineer had continued at his post in order to save life, and the court, in reversing the finding of a jury that he was negligent in not jumping from the engine, said: "According to the common appreciation of human conduct and character, this evidence

presents an example of heroic bravery and fidelity of duty at the post of danger most praiseworthy and commendable, and an occurrence worthy of lasting record in the book of heroic deeds.  *  *  *  *  To hold as a matter of law in this case that the deceased was guilty of want of ordinary care and prudence, as the engineer in charge of the locomotive and train, in not jumping off at this crisis and abandoning his engine, from the mere apprehension of uncertain danger, would make a legal precedent very dangerous to the railway service in life and property, and by which it would be exceedingly difficult, if not impossible, to distinguish the cases and the circumstances in which it would or would not be the duty of an engineer to jump off and desert his engine, or to determine in point of time when he should do so, and the necessity or prudence for him to do so." See, also, *Central Ry. v. Crosby*, 74 Ga. 737 (58 Am. Rep. 463). Cases involving the rescue of adults as well as infants from imminent danger are numerous, and the principle seems to be well established that he who springs to the rescue of another, encountering great danger to himself, is not to be denounced as negligent, but that the propriety of his conduct is to be left to the judgment of the jury. *Pennsylvania Co. v. Langendorf*, 48 Ohio St. 316 (28 N. E. Rep. 172, 13 L. R. A. 190, 29 Am. St. Rep. 553); *Linnehan v. Sampson*, 126 Mass. 506 (30 Am. Rep. 692); *Becker v. Ry.*, 22 Ky. Law 1893, (61 S. W. Rep. 997, 53 L. R. A. 267); *Maryland Steel Co. v. Marney*, 88 Md. 482 (42 Atl. Rep. 60, 42 L. R. A. 842, 71 Am. St. Rep. 441); Thompson's Com. on Negligence, section 198. See *Liming v. Ill. Cen. R. Co.*, 81 Iowa, 246.

II.    But negligence on the part of the defendant either toward the person rescued or the party making the rescue after the attempt has been begun is essential to a recovery in all cases. This was illustrated in *Evansville & Crawford R. Co. v. Hiatt*, 17 Ind. 102, where a son undertook to rescue his father from in front of a moving train on a bridge, and recovery was denied for that the

z. MASTER and servant: negligence:

employes of the railroad company did not observe either in time to avoid a collision. In *Donahoe v. Ry. Co.,* 83 Mo. 560 (53 Am. Rep. 594) the court, in considering the liability of the company for injury to a mother in attempting to rescue her child, perspicuously states the principles governing cases of this character: "It is to be observed that only when the railroad, by its own negligence, created the danger, or through its negligence is about to strike a person in danger, that a third person can voluntarily expose himself to danger in an effort to rescue such person, and recover for an injury he may sustain in that attempt. For instance, a man is lying on the track of a railroad, intoxicated or asleep, but in such a position that he cannot be seen by the men managing an approaching train, and they had no warning of his situation, and another, seeing his danger, should go upon the track to save his life and be injured by the train, he could not recover unless the trainmen were guilty of negligence with respect to the rescuer, occurring after the beginning of his attempt. If the railroad company is not chargeable with negligence with respect to the person in danger, the case of the person who attempted to rescue him and was injured must be determined with reference to the .egligence of the company in its conduct toward him and his making the attempt. In other words, the negligence of the company as to the person in danger is imputed to the company with respect to him who attempts the rescue, and, if not guilty of negligence as to such person, then it is only liable for negligence occurring with regard to the rescuer after his efforts to rescue the person had commenced." See, also, *Gramlich v. Wurst,* 86 Pa. 74 (27 Am. Rep. 684). It is not pretended that plaintiff was not assigned a safe place to do his work, nor is it claimed there was any want of care with respect to him after he began his efforts to sustain the wall with the stick. But was there any negligence on the part of defendants toward Parsons, the person rescued? The law of negligence is based on the relative rights and duties of one person toward another. Says Judge Thompson, in his Com-

mentaries on the Law of Negligence, section 3: "An essential ingredient of any conception of the law of negligence is that it involves the violation of a legal duty which one person owes another—the duty to take care for the safety or property of the other; and the converse proposition is that, where there is no legal duty to exercise care, there can be no actionable negligence. Therefore it is reasoned that a plaintiff who grounds his actions upon the negligence of the defendant must show not only that the conduct of the defendant was negligent, but also that it was a violation of some duty the defendant owed to him." These principles are of universal recognition in text-books and decisions.

Undoubtedly Parsons owed the moral duty of protecting his own person from harm. But the love of life is regarded as a sufficient inducement to self-preservation, all that is deemed essential for the government of persons in matters affecting themselves alone. Where no one else is concerned, the individual may incur dangers and risks as he may choose, and in doing so he violates no legal duty. He cannot be guilty legally, though he may be morally, of neglecting himself. It matters not whether he (Parsons) was vice principal or fellow servant, as he voluntarily undertook on his own motion to undermine the wall. This endangered no one's life but his own. If he was in peril, it was because he placed himself there. There was no negligence on the part of either defendant as to him, and for this reason there could have been none as to his rescuer. To illustrate, suppose a person with intent to suicide should jump into the river, and another, seeing his peril, but without knowledge of his intent, should leap in after him, and in attempting to save him be injured. Would any one contend that the latter could recover the damages resulting from the former or his administrator? Certainly not, and for the reason that negligence could not be imputed to the suicide. His was the dereliction of a moral, not a legal, duty to himself; for to take one's own life, though a crime at the common law, is not so declared by our Code. It may be said, however, that Parsons ought,

in placing himself in peril, to have anticipated that some one would, upon discovering his danger, undertake to shield him from harm. But this was a contingency which, as it seems to us, would not be likely to be contemplated. In the first place, there is nothing in the record to indicate that Parsons, in the exercise of ordinary care, could not have undermined the wall with safety to himself. That he so intended must be presumed, for the presumption in favor of prudence is always to be indulged until the contrary appears. If, then, he might have performed the work with safety to himself, neither he nor the company is chargeable with negligence for not anticipating that he would do it otherwise, and that, if he so did, somebody would attempt to rescue him. Nor is the probability of receiving such assistance a matter which a person of ordinary diligence, in undertaking a perilous enterprise, would be likely to take into consideration. Men do not expose their lives to danger with the idea that others will protect them from harm by risking their own lives. Though history teems with accounts of heroic conduct and self-sacrifice, deeds of this kind have not become so common that they are to be anticipated as likely to occur whenever opportunity is afforded. The instincts of self-preservation still so dominate human conduct that acts like that under consideration, in which life itself was risked for the protection of another, are of such rare occurrence as always to commend the special attention and admiration of the entire community, and by the common voice of mankind those who do them are singled out as worthy of enrollment on the scroll of heroes. Because of their infrequency, however, it cannot be said they should enter into the calculations of men as at all likely in the ordinary transactions of life. As they spring from magnanimity, magnanimity must be relied upon in cases like this for reparation.—AFFIRMED.