FRANK TERPSTRA, Appellant, v. JOSEPH SCHINKEL, Appellee.

No. 46544.

JANUARY 9, 1945.

H. S. Life, of Oskaloosa, for appellant.

Lake M. Crookham, of Oskaloosa, for appellee.

MILLER, J.—On March 31, 1943, plaintiff filed a petition which, as amended, asserted that: On October 3, 1942, defendant's horse, then known to be afflicted with rabies, broke out of its enclosure, went upon the property of plaintiff, injured plaintiff and damaged his personal property, specified as a road trailer; defendant was negligent in refusing to kill said horse and in failing to confine it; plaintiff was free from contributory negli-

gence. The prayer was for damages in the sum of $2,500 and costs. On April 24, 1943, defendant filed an answer which was a general denial.

On October 21, 1943, the court granted plaintiff leave to amend his petition and simultaneously plaintiff filed an amendment thereto alleging that all animals are required by law to be restrained, that the owner thereof is liable for damages caused by their trespassing on the property of others; that defendant's horse attacked three of plaintiff's horses, causing damage of $25 to one of them, loss of use of the other two for twenty-one days at $2.50 per day, and necessitating vaccination of the three horses at an expense of $17. On the next day, defendant moved to strike from said amendment the allegations above summarized, asserting that "defendant has filed his answer to the said cause of action, that the issues were wholly made up, that the cause of action was set for trial for the 22d day of October, 1943 and was, by agreement, continued until the 25th day of October, 1943 and that the said facts and allegations which the defendant has moved to strike do state and constitute an entirely new cause of action, and entirely new claim for damages, and should be therefore stricken from the said amended petition." The motion to strike was sustained forthwith.

On October 25, 1943, defendant filed an answer which admitted that his horse broke out of an enclosure and went onto plaintiff's land, but specifically denied that defendant was negligent or that plaintiff was free from contributory negligence. On the same day the trial was had to the court without a jury.

Dr. Sinkler, a veterinarian, testified that early in October 1942 (October 2d) he met defendant on the road. Defendant asked him to examine his horse, stating, "There is something wrong with this horse, it has been chasing my hogs and cattle around the yard all night." Dr. Sinkler examined the horse and stated, "I suspect this horse of having rabies." He told defendant that he better get the horse unhitched and get it in a tight stall, get a log chain around its neck, make it secure, and keep everything away from it. When the doctor passed defendant's place later in the day the horse was not shackled or confined but was turned out in the barn lot. He told de-

fendant's wife that the horse ought to be tied up or locked up in a tight box stall. The next day the doctor was called out to defendant's place to destroy the horse. It was loose but was finally cornered and shot. It was afflicted with rabies. On cross-examination the doctor explained the symptoms of rabies and why he was of the opinion that this horse was so diseased.

August Blunk testified that he was present (October 2d) and heard Dr. Sinkler tell defendant that the horse had rabies.

W. S. Utterback testified that in October (October 3, 1942) he saw two men trying to get a horse out of the pasture across the road from plaintiff's house. They finally got it rounded up. The horse was sick; it was frothing at the mouth. A horse that was with it was pretty badly chewed up. The sick horse ran up to plaintiff's team, chewed on their necks. Utterback warned plaintiff's children to get in the house. Utterback left because he was afraid of the sick horse.

Plaintiff testified that at about 10 a. m., October 3, 1942, he and his son were driving a team with a load of corn fodder on his wagon trailer. As they turned into his yard, W. S. Utterback was there waiting for him. Some people in plaintiff's pasture across the road (defendant and his brother) called to him to open the gate to let a horse out. Plaintiff opened the gate and they chased the horse through it. One of plaintiff's horses was with defendant's horse. Defendant's horse was frothing at the mouth, acted mad or crazy; it attacked plaintiff's team, bit them. Defendant and his brother said that the horse was crazy, was not feeling right. They got the horse away from the team and into the barn but it burst the door open. They finally caught it, tied it to plaintiff's road trailer to try to lead it home, but the horse pushed the trailer into the ditch, tore the box off, broke several boards, caused the team to break the tongue. The amount of the damage to the wagon trailer was $30.93.

Plaintiff further testified that defendant's horse broke loose from the wagon and ran back into his yard, then into his timber pasture. He tried to help round it up. It would stand with its head down, blood and froth running out of its mouth, like it was asleep. Then it would suddenly start charging about. During a quiescent spell defendant and his brother got a halter on it but it broke away from them. They then got a rope onto

its halter. Plaintiff led it. It led like a gentle horse for about one hundred and fifty feet, then started to run in a circle around a tree. Plaintiff held onto the rope. It stopped, then took a notion to go on. They led it down the road a way. Then it took another spell and got away from plaintiff, ran clear home. They got it into defendant's yard. Defendant's wife came out and said, ''You were advised to kill that horse and I begged you to all night. Will you shoot it now?'' Defendant said, ''I can't shoot a good horse like that, I will try and get it in the barn.'' The horse broke through the gates and a fence and into a pasture. They went after it. They had another rope fifteen or twenty feet long they were trying to tie onto the halter rope so they could tie him down. Plaintiff crept up close behind him; as he reached to pick up the rope, the horse woke up and gave plaintiff a big kick; one foot hit him on the elbow and one on the shoulder. Defendant said, ''This is the end of it. I don't want anything more to do with him; someone else can kill him.'' Plaintiff was sick and laid down. Defendant said, ''I am going home; I think you had better go to a doctor. I have been taking treatment for rabies; I have to go fourteen miles every day.''

Plaintiff testified that he went home. Dr. Wilcox attended him. His arm was bruised. It was thirty days before he could straighten it out. It was swollen up tight at first, very painful. He hired a man to help him for about nine days at $5 a day, paid him $45. Plaintiff was present when the horse was shot on the afternoon of October 3d; he was returning from the doctor's office.

Plaintiff offered to prove that he was put to expense of $17 to vaccinate his horses, had to confine two of his horses for twenty-one days; that the value of the use of the team was $2.50 per day; that the third horse's value was reduced $25. The offers were objected to because irrelevant under the issues of the case. The objections were sustained and the evidence was excluded.

At the close of plaintiff's evidence, the defendant moved for judgment on two grounds: (1) that there was no evidence that defendant was negligent in permitting his horse to escape (2) that, under the record, plaintiff had full knowledge of the

disposition and habits of defendant's horse, was a mere volunteer, voluntarily assumed the risk of injury, and was guilty of contributory negligence. The court held that plaintiff had the same knowledge of the disposition of the animal as defendant, and, when he was kicked by the horse, he was guilty of contributory negligence in attempting to take hold of the rope; what he did was done voluntarily and was not attributable to defendant. The motion was sustained; judgment was entered accordingly, and plaintiff appeals, asserting three assignments of error.

I. The first assignment of error challenges the court's ruling on defendant's motion to strike certain allegations from plaintiff's amendment to his petition. Reliance is had on sections 11182 and 11221, of the Code, 1939, and Rules 68 and 88 of the Rules of Civil Procedure. The sections of the Code are not applicable. While the action was commenced before the effective date of the Rules of Civil Procedure (July 4, 1943), the amendment was filed thereafter and, under paragraph (b) of Rule 1, the rules were applicable to defendant's motion to strike and to the questions raised therein.

Paragraph (d) of Rule 1 provides:

"After these Rules take effect courts and litigation shall no longer be governed by the statutes listed in column 1 of the Table appended to these Rules as Appendix I, and the practice and procedure shall no longer be in accordance therewith."

Both sections 11182 and 11221 of the Code, 1939, are listed in column 1 of the aforesaid Appendix I, so that our practice and procedure is no longer in accordance therewith. Both have been expressly repealed by the Rules of Civil Procedure pursuant to chapter 311, Acts of the Forty-ninth General Assembly.

Rule 88 provides, in part, as follows:

"The court, in furtherance of justice, may allow later amendments, including those to conform to the proof and which do not substantially change the claim or defense. The court may impose terms, or grant a continuance with or without terms, as a condition of such allowance."

The foregoing provisions, though more concise, are sub-

stantially those of section 11182 which is now superseded thereby. We are satisfied that they should have substantially the same interpretation that was previously accorded the statutory provisions.

The motion to strike asserted that the amendment stated a new cause of action. We cannot agree. In Brooks v. Seevers, 112 Iowa 480, 482, 84 N. W. 517, we stated:

"The query, then, is, does the substituted petition present a new and distinct cause of action? Appellant's theory is that, the action stated in each petition being for malicious prosecution, the cause of action is the same; but we cannot adopt that view of the case. The cause of an action is that which gives rise to it. The act or acts from which a liability accrues and an action for malicious prosecution may be for one of many causes. The identity of a cause of action is not fixed by the general term 'malicious prosecution,' but by the averments of facts from which such an action arises, as would be true in actions for divorce, for negligence, or any other of the many actions known by general legal designations."

Except for items of damage, there were no new allegations of fact. The allegation of the law applicable to the facts merely stated that which would follow by applying section 2980, Code, 1939, and similar statutes, to the facts alleged in plaintiff's original petition. The application of such statutes, or similar rules of the common law, to the facts asserted inhered in those allegations of fact. The amendment did not state a new cause of action.

The allegations of damage to plaintiff's three horses were not included in the original petition. However, in Jarozewski v. Allen, 117 Iowa 632, 635, 91 N. W. 941, 942, we stated:

"It is too well settled to admit of the citation of authorities that under the practice prevailing in this state the allowance of amendments at almost any stage of a trial is the rule, and the refusal of such privilege is the exception. It is true that this almost unlimited right of amendment leads too frequently to looseness in pleading, and to delay in legal procedure; but otherwise it is not often that any substantial injustice is done."

We think that Rule 88 of the Rules of Civil Procedure was so drawn as to perpetuate the authority of the trial court in the liberal allowance of amendments. Here the action was to be tried to the court. The total of the allegations of damage set forth in the amendment which the court struck was less than $100. The prayer of the petition was not increased thereby. The damages arose out of the same transaction that was asserted in the original petition. Leave to amend was obtained before the amendment was filed. We think that the ruling was too technical and that the court abused its discretion in striking the allegations from the amendment.

II. The second assignment of error challenges the court's rulings on plaintiff's offers to show the damages resulting from the injuries to plaintiff's horses from being attacked by defendant's horse. With the allegations of the amendment to the petition stricken, the offers of proof were irrelevant to the issues as made. However, on a retrial of the case, the amendment should be allowed to stand. Accordingly, the offers of proof will be relevant to the issues.

III. The third assignment of error challenges the sustaining of defendant's motion for judgment at the close of plaintiff's evidence. Plaintiff relies upon our holding in Parsons v. Manser, 119 Iowa 88, 93 N. W. 86, 62 L. R. A. 132, 97 Am. St. Rep. 283. In that case plaintiff's horses were stung to death by defendant's bees. In affirming a judgment for plaintiff we held that one who keeps animals of ferocious propensities is presumed to be negligent if they injure the person or property of another. We declined to impose the doctrine of absolute liability for the consequences of injuries received from wild beasts kept in confinement to creatures so nearly domesticated as bees and observed that the rule applicable to wild animals has been relaxed and that Judge Cooley, in his work on torts, took the position that liability of the owner or keeper should rest on the doctrine of negligence.

We do not think that it is necessary or desirable to now determine whether defendant should be subjected here to the rule of absolute liability which has been applied to the owner or keeper of a wild animal. Under the pleadings, the case was presented on issues of negligence and freedom from contributory

negligence. Under the record there was a prima facie case of negligence on the part of the defendant and, as he introduced no evidence, the basis for his liability is unchallenged, except by the claim of contributory negligence or voluntary assumption of the risk of injury. Even where the owner or keeper of a wild animal is subjected to absolute liability, he may still defend on the ground that the injured party voluntarily exposed himself to injury. Molloy v. Starin, 191 N. Y. 21, 83 N. E. 588, 16 L. R. A., N. S., 445, 14 Ann. Cas. 57. Since the only basis for a defense, under the record as now made, is predicated on plaintiff's voluntary acts, the defense is substantially the same no matter what the basis for defendant's liability.

However, there is one element in the defense to which the trial court did not give proper consideration in our judgment. That is the fact that defendant created an emergency which should be considered in determining whether plaintiff was guilty of such rash conduct as to forfeit any right to recover from defendant. See Saylor v. Parsons, 122 Iowa 679, 681, 98 N. W. 500, 64 L. R. A. 542, 101 Am. St. Rep. 283. The case of Devine v. Pfaelzer, 277 Ill. 255, 115 N. E. 126, L. R. A. 1917C, 1080, reviews a number of decisions on this question and holds that the rule applies only where the conduct was deemed necessary to protect some other person from imminent peril. In Bletzer v. Wilson, 224 Iowa 884, 276 N. W. 836, we recognize that one cannot excuse himself on the theory of emergency if he created it himself. Here, if an emergency which was created by defendant endangered other persons, plaintiff might be justified in taking risks to save others from injury, but, if no such danger existed, his conduct could not be excused. on the ground of emergency. The testimony of W. S. Utterback would seem to sustain the contention that defendant had created an emergency which warranted taking some risk to prevent injuries to others. However, as the issue is a mixed question of law and fact, and, as the evidence on a new trial may be different, particularly if defendant chooses to introduce evidence, we do not undertake to decide such question on the record as it now stands.

For the reasons stated, the cause is reversed and remanded for a new trial.—Reversed and remanded.

All JUSTICES concur.