Dowling, J.
The defendant, at all times herein mentioned, was the owner and in possession of a farm and farm buildings located on route 5, the main road leading from Oneida to Syracuse. The defendant did not reside on the farm. The farm house was occupied by Isaac A. Barriger and his wife. Mr. Barriger was employed on the farm by the defendant. The farm and the farm buildings are located on the southerly side of the highway. The farm buildings stand on an elevation above the highway and about 150 feet distant therefrom. To reach the buildings from the highway one has to ascend a considerable grade as indicated in the photograph Exhibit 1.'
On the afternoon of October 30, 1945, the defendant drove to her farm on business. She parked her car in the lane leading to the cow barn, entered the barn and engaged in conversation with Mr. and Mrs. Barriger. While the defendant was in the *340 barn with the Barrigers, the plaintiff, his wife and three of the plaintiff’s brother’s children arrived at the farm. The plaintiff had brought the children to the farm to visit their grandparents, Mr. and Mrs. Barriger. The plaintiff parked his car in the driveway leading to the house. Leaving two children in the car and taking the baby with them, the plaintiff and his wife went to the barn to notify the Barrigers of their arrival and while in the barn they met the defendant. Shortly thereafter the defendant left the barn, entered her car, backed it around so that it faced down the incline to the main highway. The plaintiff left the barn with the defendant to move his car out of the way if necessary. The defendant drove her car part way down the incline, stopped it, left the car, walked down the incline ahead of the car for a distance of twenty feet, about faced, bent over to pick up some soft drink bottles which were lying in the path her car would take. While she was so engaged, her car, without the assistance of anyone or the application of any external force began to move down the incline towards the defendant. The defendant was oblivious of the approaching car. Noticing that the car was gaining speed, the plaintiff holloed to the defendant “ Look out ”, rushed down, pushed her out of the path of the approaching car and to safety. In order to rescue the defendant, the plaintiff was obliged to get into the pathway of the defendant’s car. Before he could extricate, himself, he was struck by the moving car sustaining severe personal injuries. The plaintiff brought action against the defendant, recovered a judgment in the amount of $2,000 damages and $86.30 costs. The defendant has appealed to this court.
The plaintiff alleged in his complaint “ She parked her automobile on a downgrade or hill without applying the emergency brake or placing the said automobile in gear, or without' taking some precaution to prevent the automobile from moving when she left same ” and by reason of such parking the car started down the grade and struck him inflicting the injuries complained of.
The plaintiff succeeded on the theory that the defendant, without fault on his part, negligently injured him while he was engaged in rescuing her from the perilous position in which the defendant had placed herself.
It is the claim of the defendant that the plaintiff was a mere licensee when he sustained his injuries; that she owed the plaintiff no duty except to refrain from wantonly or intentionally injuring him; that she was guilty of no actionable negligence which contributed to the plaintiff’s injuries and that she could be guilty of no actionable negligence against herself.
*341 The court, in substance, charged the jury (1) that it was the duty of the defendant to exercise reasonable care to avoid injury to the plaintiff, (2) that if the jury found that the defendant parked her car on the incline without taking proper precaution to prevent it from starting down the grade, they could find her negligent in that regard, if her negligence was a direct cause of the accident. The court left it to the jury to say whether the defendant was in imminent danger of being injured when the plaintiff undertook to rescue her and whether the plaintiff was injured in rescuing the defendant or in an attempt to stop the defendant’s car.
If the plaintiff was a mere licensee at the time of the accident, the defendant owed him the duty of not inflicting on him intentional or wanton injury. She also owed him the duty of not injuring him by her own affirmative negligence. (Vaughan v. Transit Development Co., 222 N. Y. 79, 82.) We think the parking of the car on the incline as disclosed by the evidence constituted an act of affirmative negligence. But the plaintiff was on the premises at the implied invitation of the defendant’s tenants, at least the jury could have so found. (Donohue v. Erie County Savings Bank, 285 N. Y. 24, 26.) Obviously the plaintiff was not a trespasser while he was engaged in the act of rescuing the defendant. He was under an obligation to her to make the effort if he reasonably could do so.
It was the duty of the defendant under the existing circumstances when she parked her car to leave it in such condition that it could not be put in motion except by the application of external force. (Tierney v. New York Dugan Bros., Inc., 288 N. Y. 16, 19; Touris v. Brewster & Company, 235 N. Y. 226, 230; Levy v. Morris Stotchik, 132 Misc. 453, 454; Lathy v. Wolfe, 85 Cal. App. 332.)
In Eckert v. The Long Island Railroad Co. (43 N. Y. 502) decided in January, 1871, the plaintiff’s intestate was standing in the afternoon of the day named, in conversation with another person about 50 feet from the defendant’s track, in Bast New York, as a train of cars was coming in from Jamaica. A child, three or four years old, was sitting or standing upon the track of the defendant’s road and was in danger of being run over, if not removed. The plaintiff’s intestate, seeing the danger of the child, ran to it, seized it, threw it clear of the track, but before he could cross the track he was struck by the engine, was thrown down receiving injuries which caused his death shortly thereafter. In affirming a judgment for the plaintiff, Judge Grover, speaking for the majority of the court, said at page 505 that the intestate seeing the child in such a critical position and
*342 that she must inevitably be crushed by the moving train owed her “ a duty of important obligation ” to rescue her from her extreme peril if he could do so without incurring great danger to himself; that it was not wrongful in him to make every effort in his power to rescue the child compatible with a.reasonable regard for his own safety; that it was his duty to exercise his judgment as to whether he could probably save the child without serious injury to himself and if, from appearances, he believed that he could, it was not negligence to make an attempt so to do, although believing possibly that he might fail and receive an injury himself; that he had no time for deliberation; that he must act instantly, if at all, as a moment’s delay would have been fatal to the child; that the law has so high a regard for human life that it will not impute negligence to an effort to preserve it, unless made under such circumstances as to constitute rashness in the judgment of prudent persons. That case defined and settled the law of rescue in-this State so far as the rescue of a person is concerned where such person has been exposed to danger and injury by the negligence of a third party. The Eckert case has become the law in most jurisdictions. The learned trial court followed the Eckert case in submitting the case to the jury. While the Eckert case defines the duty of the plaintiff in this case it does not directly touch upon the obligation which the defendant owed to the plaintiff under the circumstances. So far as we know, after extended research, the question of the defendant’s duty to the plaintiff under the facts of this case has never been determined by the courts of this State. The rigid rules of an action at law for negligence bend before a situation where the life of a person is imperilled and without penalty to his rights permit a casual bystander to take risks in the attempt to save life which would be prohibited under any other circumstances. (Matter of Waters v. Taylor Co., 218 N. Y. 248, 251, citing Eckert v. Long Island Railroad Co., supra.) Whether negligence should be imputed to the plaintiff in making the rescue was, upon the facts, a question for the jury. Danger invites rescue. (Wagner v. International Ry. Co., 232 N. Y. 176,180; Wardrop v. Santi Moving & Express Co., 233 N. Y. 227, 229.)
Negligence on the part of the defendant towards the plaintiff which induced him to undertake her rescue must be established before the plaintiff can sustain a recovery. The defendant claims that she could not be guilty of negligence as against herself; that she owed no legal duty of care toward herself and she cites the case of Saylor v. Parsons (122 Iowa 679) decided *343 in February, 1904. In that case the plaintiff was employed by Parsons, Eich & Company. That firm had concluded to enlarge its factory. The firm directed the plaintiff, with others, to remove a one-story addition thereto. The addition was about twenty-four feet square, with brick walls running against, not into, the main building.1 After the roof had been removed, the workmen proceeded to take down the north and east walls. After a portion of the east wall had been removed, the other employees went at work elsewhere, but the plaintiff continued until the brick had been taken away within a few feet ‘of the ground. He then took out a window frame, and in returning through a doorway in the east wall after setting the window aside, he noticed that Parsons, who had been overseeing the work, and also working with the men, was bent over next to the north wall undermining it at the bottom with a five-foot iron bar. The plaintiff was but twelve to fourteen feet distant. The wall appeared to be toppling over towards Parsons. Believing Parsons to be in imminent danger, plaintiff seized a piece of scantling and threw it against the wall about two feet from the top and over a window, to prevent the wall from falling. Parsons immediately rose up and withdrew without serious injury. But the brick against which plaintiff’s prop had been placed gave way, letting plaintiff forward, and he was caught by the falling wall, and his leg was so crushed that amputation was necessary. Parsons told the plaintiff that, had it not been for his coming as he did, he, Parsons, might have been crushed and killed. The plaintiff sued Parsons and Ms other employers for damages. At the close of the plaintiff’s case, the court directed the jury to return a verdict of no cause for action. On appeal to the Supreme Court, Ladd, J., writing for affirmance, said at page 683: “ Undoubtedly Parsons owed the moral duty of protecting his own person from harm. But the love of life is regarded as a sufficient inducement to self-preservation, all that is deemed essential for the government of persons in matters affecting themselves alone. Where no one else is concerned, the individual may incur dangers and risks as he may choose, and in doing so he violates no legal duty. He cannot be guilty legally, though he may be morally, of neglecting himself. It matters not whether he (Parsons) was vice principal or fellow servant, as he voluntarily undertook on his own motion to undermine the wall. This endangered no one’s life but his own. If he was in peril, it was because he placed himself there. There was no negligence on the part of either defendant as to him, and for this reason there could have been none as to Ms rescuer.” *344 The incline on which the car was parked led onto the main highway. In parking her car as she did, the defendant endangered the safety not only of the bystanders on her farm but also the safety of herself and the probable safety of the users of the highway who might be passing her farm in case her car should run onto the highway. May not a lack of self protective care be negligent towards any person in whose vicinity one exposes oneself to an undue risk of injury? We think so. The act, however, must be wrongful to the person injured as at least‘tending to create an undue risk of injury ■ to him. The rescuer need have no interest in the person rescued such as a husband has in the services of his wife or a master in the services of his servant. We think Professor Bohlen, in his Studies in the Law of Torts, lays down the proper rule in footnote 33, page 569, when he says: ‘ ‘ The rescuer’s right of action, therefore, must rest upon the view that one who imperils another, at a place where there may be bystanders, must take into account the chance that some bystander will yield to the meritorious impulse to save life or even property from destruction, and attempt a rescue. If this is so, the right of action depends not upon the wrongfulness of the defendant’s conduct in its tendency to imperil the person whose rescue is attempted, but upon its tendency to cause the rescuer to take the risk involved in the attempted rescue. And it would seem that a person who carelessly exposes himself to danger or who attempts to take his life in a place where others may be expected to be, does commit a wrongful act towards them in that it exposes them to a recognizable risk of injury.” The Law Quarterly Review (Yol. 58, p. 300) agrees with the rule stated by Professor Bohlen.
We think the defendant, by parking her car as she did, exposed herself to undue risk of injury. Her act in that respect was wrongful to the plaintiff since it brought about an undue risk of injury to him causing him to undertake her rescue to his injury and damage. (Brugh v. Bigelow, 310 Mich. 74; 43 Mich. L. Rev. 980-982.) We think there was a legal duty owing by the defendant to the plaintiff not to create an undue risk of injury to him and not merely a moral duty' as was held in Saylor v. Parsons (122 Iowa 679, supra).
We do not regard the verdict as excessive under the facts. The judgment should be affirmed, with costs.
All concur. Present — Taylor, P. J., Dowling, Harris, Larkin and Love, JJ.
Judgment affirmed, with costs. [See post, p. 949.]