[No. C029431. Third Dist. Nov. 29, 1999.]

ELDA R. SEARS, Plaintiff and Appellant, v.
JOHN D. MORRISON et al., Defendants and Respondents.

## COUNSEL

Donald E. Bartholomew; James V. Jordan; and Michael R. Hambly for Plaintiff and Appellant.

Moss & Enochian, Robert A. Spano and Mark D. Norcross for Defendants and Respondents.

## OPINION

**MORRISON, J.**—Under the rescue doctrine, an actor is usually liable for injuries sustained by a rescuer attempting to help another person placed in danger by the actor's negligent conduct. ██ The question here is whether an actor is liable for injuries sustained by a person who is trying to rescue *the actor* from his own negligence. The answer is yes.

John D. Morrison put a swamp cooler on a furniture dolly and removed its sides, exposing the machinery. He was working on it, while it was running, when he tripped on an electrical cord while trying to empty an ashtray, causing the swamp cooler to fall on him. Elda R. Sears, who had been with Morrison while he was working on the cooler, tried to help him. Because of his poor medical condition and difficulty in breathing, she thought he might have a heart attack or be unable to breathe with the heavy machine on top of him. When she tried to lift the swamp cooler off of Morrison, her hand was severely cut by a moving part.

Sears sued Morrison and his mother (now deceased), who owned the property. The trial court granted a defense motion for summary judgment because "The rescue doctrine does not apply in this case." Sears filed a notice of appeal and later obtained an adverse judgment.

██ The rescue doctrine, like so many doctrines, is a specific application of a general legal principle. Here, the general rule, set forth in Civil Code section 1714, subdivision (a), is *"Every one is responsible, not only for the*

*result of his willful acts, but also for an injury occasioned to another by his
want of ordinary care or skill in the management of his property or person,
except so far as the latter has, willfully or by want of ordinary care, brought
the injury upon himself.*" (Italics added.)

Where a person has negligently managed his own person he is liable for
the foreseeable consequences. Generally, where an actor puts himself or
others in danger, it is foreseeable a person will attempt to rescue those
placed in danger. As Justice Cardozo said, "Danger invites rescue." (*Wagner
v. International Ry. Co.* (1921) 232 N.Y. 176, 180 [133 N.E. 437, 437, 19
A.L.R. 1] (*Wagner*).) Accordingly, although the rescuer may be said to have
willingly exposed himself to the danger, such act does not eliminate or
excuse the culpability created by the actor's negligence.

■ As Morrison concedes, this is a causation question. "The interven-
tion of a force which is a normal consequence of a situation created by the
actor's negligent conduct is not a superseding cause of harm which such
conduct has been a substantial factor in bringing about." (Rest.2d Torts
Legal Cause, § 443.) So, as stated in the comments to this section of the
Restatement, "A car negligently driven by A endangers B, a child in the
highway. C, a bystander, dashes out to rescue the child, and is struck and
injured by A's car. A is subject to liability to C." (*Id.*, § 443, com. d, illus. 4,
p. 474.) "If the actor's negligent conduct threatens harm to another's person,
land, or chattels, the normal efforts of the other or a third person to avert the
threatened harm are not a superseding cause of harm resulting from such
efforts." (*Id.*, § 445.) But, "The rule stated in this Section applies equally
where the conduct of the actor has created a danger only to himself, if at the
time of such conduct he should reasonably anticipate that others might
attempt to rescue him from his self-created peril, and sustain harm in doing
so." (*Id.*, § 445, com. d, p. 476.) "A negligently drives a tank truck full of
gasoline so that it goes off of the highway and is wrecked. A is knocked
unconscious, and the truck catches fire. B, a bystander, attempts to rescue A
from the burning truck, and while he is doing so the gasoline explodes,
injuring B. A is subject to liability to B." (*Id.*, § 445, illus. 4, p. 477.) So,
too, here.

■ Morrison repeatedly asserts Sears employs the rescue doctrine to
prove *negligence*; this is incorrect. As the movant on summary judgment it
was Morrison's burden to demonstrate that Sears could not prevail. (*Live
Oak Publishing Co.* v. *Cohagan* (1991) 234 Cal.App.3d 1277, 1287-1288
[286 Cal.Rptr. 198].) He attempted to do so by showing the hazard was
obvious and Sears caused her own injuries by *injecting herself into the
emergency*. Sears opposed the motion by pointing to the rescue doctrine,

which generally holds a person to a lesser standard of care when confronted with an emergency calling for the rescue of another person: The rescuer, absent reckless conduct, is not deemed to have "brought the injury upon himself" as phrased in Civil Code section 1714. That does not mean Sears is using the doctrine to show Morrison's lack of care. Nothing in Morrison's papers established his act of tripping and pulling the swamp cooler on top of himself (after having removed its covers and left it running while working on it) was prudent. Morrison's analysis, making the unremarkable point that proof of "rescue" is not a substitute for proof of negligence, does not help him.

It is true, as Morrison states, the rescue doctrine arose in an era of contributory negligence, where *any* negligence on the part of a plaintiff barred the action. "The purpose of the rescue doctrine when it was first created was to avoid having a plaintiff be found contributorily negligent as a matter of law when he voluntarily placed himself in a perilous position to prevent another person from suffering serious injury or death, the courts often stating that the plaintiff's recovery should not be barred unless his rescue attempt was recklessly or rashly made." (Annot., Rescue Doctrine: Applicability and Application of Comparative Negligence Principles (1990) 75 A.L.R.4th 875, 876, fn. omitted.) Most defendants could point to some negligence by the rescuer and simply approaching the danger could be construed as negligent, or as an assumption of the risk. This advanced no tenable public policy: It deterred rescues and ran counter to the human impulse to help others in need. Accordingly, the courts ruled the act of approaching danger did not interrupt the normal causal reach of tort liability and did not, of itself, establish contributory negligence. (1 Sutherland, Law of Damages (4th ed. 1916) Compensation, § 39, pp. 148-149.) In most of the cases, the defendant's negligence endangers a third party. But, with one arguable difference, the same policy considerations apply in the first party case, where the defendant endangers himself. The arguable difference is a person does not have a *legal* duty to avoid hurting himself.

Morrison concedes the majority of jurisdictions extend the rescue doctrine to first party cases, though he only discusses a handful of the cases. His theory is that most decisions impose a form of liability without fault, because there is no general duty to refrain from hurting oneself. We agree with Morrison's premise that one does not have a *legal* duty to avoid harming himself. (*Thor* v. *Superior Court* (1993) 5 Cal.4th 725, 741 [21 Cal.Rptr.2d 357, 855 P.2d 375]; *Fluharty* v. *Fluharty* (1997) 59 Cal.App.4th 484, 496 [69 Cal.Rptr.2d 244]; see *Lodi* v. *Lodi* (1985) 173 Cal.App.3d 628, 631 [219 Cal.Rptr. 116] [person cannot sue himself].) But the issue is not Morrison's "right" to be negligent to himself. By the terms of Civil Code

section 1714, he has a duty to prudently manage his person so as not to endanger others.

Professor Francis H. Bohlen, the first Reporter of the Restatement of Torts, in a passage misunderstood by Morrison, disagrees with the root of Morrison's claim: "[T]he right of action depends not upon the wrongfulness of the defendant's conduct in its tendency to imperil the person whose rescue is attempted, but upon its tendency to cause the rescuer to take the risk involved in the attempted rescue. And it would seem that a person who carelessly exposes himself to danger or who attempts to take his life in a place where others may be expected to be, does commit a wrongful act towards them in that it exposes them to a recognizable risk of injury." (Bohlen, *Liability in Tort of Infants and Insane Persons* (1925) 23 Mich. L.Rev. 9, 30-31, fn. 33 [reprinted in Bohlen's seminal collection, Studies in the Law of Torts (1926) p. 569, fn. 33].)

After his concise "danger invites rescue" encapsulation, Cardozo continued: "The risk of rescue, if only it be not wanton, is born of the occasion. The emergency begets the man. The wrongdoer may not have foreseen the coming of a deliverer. *He is accountable as if he had.* [Citation.]" (*Wagner, supra,* 232 N.Y. at p. 180 [133 N.E. at p. 438], italics added.) This is true regardless of who is rescued.

The primary authority supporting Morrison's view is *Saylor v. Parsons* (1904) 122 Iowa 679 [98 N.W. 500] (*Saylor*). Parsons endangered himself, Saylor came to his aid, was injured, and sued. The trial court directed a defense verdict. The Iowa Supreme Court made two points; contributory negligence would not bar the action absent a rash rescuer (see *McClure v. Southern Pacific Co.* (1919) 41 Cal.App. 652, 656 [183 P. 248] [citing *Saylor*]), and the rescuer must show the defendant was negligent. (122 Iowa at pp. 680-681 [98 N.W. at pp. 501-502].) The *holding* was no negligence was shown: "Where an employee rescues a fellow workman from a position of peril and is injured in so doing, he cannot recover from the master for such injury without establishing negligence on the part of the master respecting himself or co-laborer." (122 Iowa at p. 679 [2] [see 98 N.W. at p. 500 [2]], see *id.* at p. 681 [98 N.W. at p. 501].) The *rationale* was Parsons endangered himself and rescue is not generally foreseeable. "The law of negligence is based on the relative rights and duties of one person toward another. . . . Undoubtedly Parsons owed the moral duty of protecting his own person from harm. But the love of life is regarded as a sufficient inducement to self-preservation, . . . Where no one else is concerned, the individual may incur dangers and risks as he may choose, and in doing so he violates no legal duty. . . . To illustrate, suppose a person with intent to

suicide should jump into the river, and another, seeing his peril, but without knowledge of his intent, should leap in after him, and in attempting to save him be injured. Would any one contend that the latter could recover the damages resulting from the former or his administrator? Certainly not, and for the reason that negligence could not be imputed to the suicide. His was the dereliction of a moral, not a legal, duty to himself; for to take one's own life, though a crime at the common law, is not so declared by our Code. It may be said, however, that Parsons ought, in placing himself in peril, to have anticipated that some one would, upon discovering his danger, undertake to shield him from harm. But this was a contingency which, as it seems to us, would not be likely to be contemplated. In the first place, there is nothing in the record to indicate that Parsons, in the exercise of ordinary care, could not have undermined the wall with safety to himself. That he so intended must be presumed, for the presumption in favor of prudence is always to be indulged until the contrary appears. If, then, he might have performed the work with safety to himself, neither he nor the company is chargeable with negligence for not anticipating that he would do it otherwise, and that, if he so did, somebody would attempt to rescue him. Nor is the probability of receiving such assistance a matter which a person of ordinary diligence, in undertaking a perilous enterprise, would be likely to take into consideration. Men do not expose their lives to danger with the idea that others will protect them from harm by risking their own lives. Though history teems with accounts of heroic conduct and self-sacrifice, deeds of this kind have not become so common that they are to be anticipated as likely to occur whenever opportunity is afforded. The instincts of self-preservation still so dominate human conduct that acts like that under consideration, in which life itself was risked for the protection of another, are of such rare occurrence as always to commend the special attention and admiration of the entire community, and by the common voice of mankind those who do them are singled out as worthy of enrollment on the scroll of heroes. Because of their infrequency, however, it cannot be said they should enter into the calculations of men as at all likely in the ordinary transactions of life. As they spring from magnanimity, magnanimity must be relied upon in cases like this for reparation." (122 Iowa at pp. 682-684 [98 N.W. at p. 502].)

The assertion the impulse to rescue is not foreseeable is anomalous. But *Saylor, supra,* 122 Iowa 679 [98 N.W. 500] has been viewed as barring all first party liability. Neither Morrison nor this court has found good authority for this supposed holding of *Saylor,* and, as will be shown, many authorities have considered the question.

The leading annotation finds no case following *Saylor,* and suggests *Saylor* is distinguishable from the pure first party fact pattern because the

court also seems to base its conclusion on the ground the defendant acted carefully before the danger arose. (Annot., Rescue Doctrine: Negligence and Contributory Negligence in Suit by Rescuer Against Rescued Person (1965) 4 A.L.R.3d 558, 559, and supp.) In the case annotated, *Britt* v. *Mangum* (1964) 261 N.C. 250 [134 S.E.2d 235, 4 A.L.R.3d 551], the court, prior to rejecting the *Saylor* rationale, observed charitably the *Saylor* view "has not met with favor in other jurisdictions, but instead, when it has been pressed, it has been almost invariably rejected." (*Id.*, at p. 252 [134 S.E.2d at p. 237].) It discusses the following cases, which we have reviewed, each of which allows a first party rescue suit: *Brugh* v. *Bigelow* (1944) 310 Mich. 74, 80 [16 N.W.2d 668, 671, 158 A.L.R. 184] ("His cries for help belied his claimed freedom from duty. Defendant further argues that rescue is unusual and that it is . . . not to be anticipated that passers-by would respond to relieve known dire necessity resulting from an automobile accident. We understand the contrary to be the case"); *Carney* v. *Buyea* (1946) 271 A.D. 338, 344 [65 N.Y.S.2d 902, 909] ("We think there was a legal duty owing by the defendant to the plaintiff not to create an undue risk of injury to him and not merely a moral duty as was held in" *Saylor, supra,* 122 Iowa 679 [98 N.W. 500]); *Longacre* v. *Reddick* (Tex.Civ.App. 1948) 215 S.W.2d 404.

In addition, the following cases allow such suits: *Lowrey* v. *Horvath* (Mo. 1985) 689 S.W.2d 625, 628 (*Lowrey*) ("There is no logical basis for distinguishing between the situation in which recovery is sought against a defendant whose negligence imperiled some third party, and the situation in which recovery is sought against a defendant who negligently imperiled himself"), overruling *Betz* v. *Glaser* (Mo.App. 1964) 375 S.W.2d 611], reaffirming earlier decision in *Dodson* v. *Maddox* (1949) 359 Mo. 742, 752 [223 S.W.2d 434, 439-440]; *Heck* v. *Robey* (Ind. 1995) 659 N.E.2d 498, 501-502 (agreeing with *Lowrey*); *Provenzo* v. *Sam* (1968) 23 N.Y.S.2d 256, 260 [296 N.Y.S.2d 322, 244 N.E.2d 26, 28] ("the doctrine has been expanded to encompass a two-party situation"); *Usry* v. *Small* (1961) 103 Ga.App. 144, 145 [118 S.E.2d 719, 720] ("When the defendant operated his automobile in the manner alleged he was bound to anticipate that, if he wrecked his car, others would attempt to rescue him from it"); *Ruth* v. *Ruth* (1963) 213 Tenn. 82, 90 [372 S.W.2d 285, 289] ("The fact that the rescued is alleged to be the negligent party does not affect the cause of action of the rescuer. The law would recognize the same regard for human life and safety regardless of whether or not the party being rescued was the one guilty of the negligence creating the danger to life."); *Talbert* v. *Talbert* (1960) 22 Misc.2d 782, 784-785 [199 N.Y.S.2d 212, 215-216]; *Fulton* v. *St. Louis-San Francisco Ry. Co.* (10th Cir. 1982) 675 F.2d 1130, 1134 (Federal Employers' Liability Act case: "The railroad's novel argument overlooks that the rescue doctrine also permits a rescuer to recover for his injuries from the imperiled

party if that person has negligently placed himself in danger."); see *Barnett* v. *Des Moines Electric Co.* (8th Cir. 1925) 10 F.2d 111, 114 (reckless rescue on the facts, but cites many cases, including *Saylor*, and concludes ". . . the courts recognize the human instinct which prompts a person to go to the rescue of another in a position of imminent danger"); *Maltman* v. *Sauer* (1975) 84 Wn.2d 975, 976-977 [530 P.2d 254, 256] (doctrine not satisfied on facts, but court states "In a general sense the 'rescue doctrine' is intended to provide a source of recovery to one who is injured while reasonably undertaking the rescue of a person *who has negligently placed himself in a position of imminent peril.*" (italics added)); *Ouellette* v. *Carde* (R.I. 1992) 612 A.2d 687 (refusing to apply comparative fault unless the first party rescuer was reckless]; *Drummond* v. *Mid-West Growers* (1975) 91 Nev. 698, 706-707 [542 P.2d 198, 204] (same); *Ruffin* v. *Tignor Trucking Corporation* (Va.Cir.Ct., July 20, 1982, No. LE-1782) 1982 WL 215243, *2 ("The only problem with the defendant's contention is that they have not been able to produce another case holding the same position since 1904."); accord, *Butler* v. *Jersey Coast News Co.* (1932) 109 N.J.L. 255, 257 [160 A. 659] (declining to apply rescue doctrine as such, but allowing recovery against driver pinned under a truck due to driver's negligence, because highway user "had a right to exercise a power to either aid in removing the obstruction or assisting any one who appeared to be in danger").

English law is in accord. (*Baker* v. *T. E. Hopkins and Son, Ltd.* (1958) 3 All E.R. 147 [1 W.L.R. 993], affd., *Baker* v. *T. E. Hopkins & Son, Ltd.* (1959) 3 All E.R. 225 [1 W.L.R. 966]; see *Videan* v. *British Transport Commission* (1963) 2 Q.B. 650 [2 All E.R. 860, 3 W.L.R. 374] (opn. of Lord Denning, Master of the Rolls) [third party case, but "[T]he right of the rescuer to maintain an action for negligence is an independent right, not derived from that of the victim"]; *Knightley* v. *Johns* (1982) 1 All E.R. 851 [1 W.L.R. 349]; *White* v. *Chief Constable* (1998) 1999 1 All E.R. 1 [3 W.L.R. 1509] (opn. of Lord Hoffmann) ["The cases on rescuers are therefore quite simple illustrations of the application of general principles of foreseeability and causation to particular facts"]; Fleming, Law of Torts (5th ed. 1977) 162-163, fn. 47 ["The real problem here is not the technical problem of 'duty,' but the policy problem of whether to encourage unsolicited aid"]; Winfield & Jolowicz on Tort (10th ed. 1975) Defences, pp. 625-626 [no distinction between first party and third party cases].)

In addition, the leading torts treatises state a duty of care is owed to a rescuer "even when the defendant endangers no one's safety but the defendant's own." (Prosser & Keeton on Torts (5th ed. 1984) Proximate Cause, § 44, p. 308; see Bohlen, Studies in the Law of Torts, *supra*, p. 569, fn. 33 [*Saylor* decision, *supra*, 122 Iowa 679 [98 N.W. 500] "erroneous since it

assumes that the right of a rescuer is derived from the right of the person imperiled to recover, had he instead of the rescuer, been injured"]; 3 Speiser et al., The American Law of Torts (1986) § 12.38, pp. 613-615 [*Saylor* the only contrary authority, "Nearly all the opinions in the cases allowing recovery indicate that the courts were aware of the Saylor case and either deliberately declined to follow it or distinguished it on its facts"]; 65A C.J.S. (1965) Negligence, § 124, p. 86 ["doctrine is not rendered inapplicable because suit is brought against the person being rescued"]; 57A Am.Jur.2d (1989) Negligence, § 1082, p. 943 [*Saylor* the *only* contrary case and "readily distinguished by the courts which decline to follow the rule set forth"]; Comment, *Restitutionary Recovery for Rescuers of Human Life* (1986) 74 Cal.L.Rev. 85, 92 ["A corollary to the *Wagner* rule, important to the present analysis, is that it need not be a third party defendant's negligence which creates the rescue-inviting danger. With a single exception, the cases hold that an actor whose own negligence causes a hazardous situation is liable to one who attempts to rescue him." (fn. & italics omitted)]; Levmore, *Waiting for Rescue: And Essay on the Evolution and Incentive Structure of the Law of Affirmative Obligations* (1986) 72 Va. L.Rev. 879, 898, fn. 54 [*Saylor* "a lone case denying recovery when only the victim was negligent"]; see also 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 1061, p. 460 ["Some decisions have gone so far as to allow recovery by the rescuer where the rescued person was the *negligent defendant himself,*" no mention of contrary authority].)

Further, even later *Iowa* cases imply *Saylor* stands but for the proposition negligence was not shown on the facts. For example, in *Terpstra* v. *Schinkel* (1944) 235 Iowa 547 [17 N.W.2d 106], the court cited the *Saylor* decision to support the following: "However, there is one element in the defense to which the trial court did not give proper consideration in our judgment. That is the fact that defendant created an emergency which should be considered in determining whether plaintiff was guilty of such rash conduct as to forfeit any right to recover from defendant." (235 Iowa at p. 554 [17 N.W.2d at p. 110].) In *Clayton* v. *Blair* (1962) 254 Iowa 372 [117 N.W.2d 879], the court approvingly quotes a law review article stating " 'In such cases the only inquiry should be whether the conduct of the plaintiff was "natural" under the circumstances, which is to be ascertained by a counter-chronological examination of the facts. Here, the term "natural" must be taken to embrace those qualities of human nature leading to risk-taking in an effort to preserve property, to rescue other persons, or to save oneself.' " (254 Iowa at pp. 377-378 [117 N.W.2d at p. 882].) This does not reflect a categorical rule against first party cases.

The trial court concluded it was bound by the decision of the Second District, Division Three, in *Holland* v. *Crumb* (1994) 26 Cal.App.4th 1844

[32 Cal.Rptr.2d 366] (*Holland*), which limits the rescue doctrine to third party cases.

But in *Scott* v. *Texaco, Inc.* (1966) 239 Cal.App.2d 431, 435 [48 Cal.Rptr. 785], the Second Division of the Second District held that rescue instructions should have been given as between a rescuer and a defendant who endangered himself. Where California intermediate appellate court cases conflict, any trial court may choose the decision it finds most persuasive. (See *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 456 [20 Cal.Rptr. 321, 369 P.2d 937].) However, because *Holland* is the only California decision which expressly addresses the difference between first party and third party cases, the trial court cannot be faulted for concluding it had to follow *Holland, supra,* 26 Cal.App.4th 1844.

*Holland* was a tow truck driver who stopped to help the drivers of three cars who got into an accident. One of the drivers, Tufenkian, began walking towards Holland on the "freeway side" of his tow truck and Holland went towards him, to warn him to walk on the other side. A passing car killed Tufenkian and hurt Holland. (*Holland, supra,* 26 Cal.App.4th at pp. 1848-1849.) The *Holland* decision addressed two theories, whether the firefighter's rule applied and whether the rescue doctrine applied. (*Id.* at p. 1847.) The firefighter's rule generally holds a public safety officer may not recover from a person whose negligence causes the emergency requiring his aid. *Holland* extended that rule to a private tow truck operator. This portion of *Holland* has been disapproved. (*Neighbarger* v. *Irwin Industries, Inc.* (1994) 8 Cal.4th 532, 545, fn. 4 [34 Cal.Rptr.2d 630, 882 P.2d 347] (*Neighbarger*).)

In discussing the rescue doctrine, *Holland* overstates a decision of the California Supreme Court, *Solgaard* v. *Guy F. Atkinson Co.* (1971) 6 Cal.3d 361 [99 Cal.Rptr. 29, 491 P.2d 821] (*Solgaard*). *Solgaard* states: "The cases have developed the rule that persons injured in the course of undertaking a necessary rescue may, absent rash or reckless conduct on their part, recover from the person whose negligence created the peril which necessitated the rescue. [Citations.] [¶] Although its precise limits are not yet fully developed, the rescue doctrine varies the ordinary rules of negligence in two important respects: (1) it permits the rescuer to sue on the basis of defendant's initial negligence toward the party rescued, without the necessity of proving negligence toward the rescuer, and (2) it substantially restricts . . . contributory negligence by requiring defendant to prove that the rescuer acted rashly . . . . [¶] The theory which underlies the rescue rule is, in essence, that 'rescuers, as a class, are always foreseeable when the defendant's negligence endangers anyone.' [Citation.] Thus, if defendant creates a situation of peril for one person (the victim), defendant properly may be

charged with having proximately caused not only that peril but also the rescue and any injury suffered during its course. [Citation.]" (*Id.* at p. 368, fn. omitted.) *Holland* cites *Solgaard* as the sole support for the following proposition: "That doctrine is applied where (1) a negligent *defendant* has placed a person (*the third party victim*) in danger and (2) the *plaintiff* has come to the rescue of the victim. The doctrine was developed to meet assertions made by negligent defendants that although they may have been negligent to their third party victims, they were not negligent to the plaintiff-rescuers." (26 Cal.App.4th at p. 1852.) However, as stated, *Solgaard* did not limit the doctrine to the third party case as *Holland* implies; it set forth the general rule, and provided the critical rationale, viz., the foreseeability of rescue. It had no need to address the first party situation and did not purport to preclude it.

*Holland, supra,* 26 Cal.App.4th 1844, then concludes Holland's act of warning Tufenkian to walk on the other side of the truck was incidental to the safety worker duties which were barred by the firefighter's rule. (*Id.* at p. 1853.) The decision then states "In addition, the rescue doctrine by its nature involves more than two persons; it necessarily requires a third party victim placed in peril by the defendant's negligence. Here, the only persons involved in the 'second rescue' were Tufenkian and Holland." (*Ibid.*) *Holland* cites *no* authority for this conclusion. *Holland* does not provide a reasoned explanation, and does not mention or discuss, the huge body of common law authorities, described above, nor the text of Civil Code 1714, in making this pronouncement.

*Bryant* v. *Glastetter* (1995) 32 Cal.App.4th 770 [38 Cal.Rptr.2d 291], criticizes *Holland, supra,* 26 Cal.App.4th 1844 on the further ground it failed to engage in a duty analysis. In this connection, it appears the California Supreme Court decision in *Neighbarger* undermines the rescue doctrine portion of *Holland* as well as the firefighter's rule portion. In *Neighbarger* the plaintiffs, employed by Powerine, were injured while trying to shut off the flow of flammable liquid caused by the negligence of Short and Brown; the plaintiffs sued Irwin, who employed Short and Brown. The court said "One also generally owes a duty of care to bystanders who attempt a rescue that becomes necessary due to one's own negligence. Thus, although it is contributory negligence unreasonably to expose oneself to a risk created by the defendant's negligence [citations], a person is not contributorily negligent who, with due care, encounters the risk created by the defendant's negligence in order to perform a rescue necessitated by that negligence. [Citations.] [¶] Under the general rule of duty, then, *Irwin and its employees had a duty to avoid negligently injuring Powerine employees.* Any exception to the general rule must be based on statute or clear public policy. [Citations.]" (*Neighbarger, supra,* 8 Cal.4th at pp. 536-537, italics added.) Since

Irwin was sued vicariously, based on the negligence of its employees, the holding arguably can be classified as a first party rescue case, although the precise point involved herein was not discussed. But the duty rationale of the case admits of no categorical exception for first party rescuers.

Just so. Why should the rescuer recover after helping a third party victim of negligence, but not recover for helping the negligent actor? Put another way, why, as a matter of public policy, should the negligent actor be given a shield from liability? Morrison offers no good reason and we see none.

The trial court assumed the "rescue doctrine" disposed of the case and did not address the premises liability theory. Morrison assumes knowledge of danger automatically relieves a landowner of liability. (See *Mautino* v. *Sutter Hospital Assn.* (1931) 211 Cal. 556, 561 [296 P. 76].) Such rule is outdated; duty and foreseeability now determine the issue. (*Osborn* v. *Mission Ready Mix* (1990) 224 Cal.App.3d 104, 120-122 [273 Cal.Rptr. 457].) In her complaint and on appeal Sears contends the danger was not the swamp cooler as such, but the danger caused by the need to *rescue* someone from the swamp cooler. In our view, Sears stretches foreseeability too far on these particular facts. (See *Krongos* v. *Pacific Gas & Electric Co.* (1992) 7 Cal.App.4th 387, 393-394 [9 Cal.Rptr.2d 124].)

### DISPOSITION

The judgment is reversed with directions to the trial court to grant summary judgment in favor of the estate of the deceased, Jennie C. Morrison, and deny the motion for summary judgment as to defendant John D. Morrison. John D. Morrison is to pay Sears's costs of appeal.

Nicholson, Acting P. J., and Hull, J., concurred.

Respondents' petition for review by the Supreme Court was denied March 15, 2000.