Scileppi, J.
On January 18, 1964 at approximately 6:00 p.m. the plaintiff was operating his pickup truck, in which his wife was a passenger, in a westerly direction along Lake Shore Drive, in the City of Dunkirk. The plaintiff observed the automobile directly in front of him (thereafter identified as being owned by respondent) begin to swerve back and forth on the highway. At this point, plaintiff remarked to his wife: “ This person must be sick, must have had a heart attack ’ ’. The automobile then continued on its wayward course, hitting a parked car, crossing the highway, colliding with a house and coming to rest on the lawn of the house with its driver, the respondent, slumped over the steering wheel.
The plaintiff parked his vehicle on the northerly side of the highway, looked in the rear view mirrors of his vehicle, observed a truck proceeding in a westerly direction along the highway, *259 allowed the truck to pass his vehicle, looked along the highway in a westerly direction, observed the lights of an oncoming car at some distance, and then ran across the highway to render assistance to the defendant. At a point approximately two or three feet from the southerly curb, the plaintiff was struck by an automobile owned and operated by the defendant Sam and sustained serious injuries.*
The respondent on the other hand was fortunate to escape with relatively minor injuries. Respondent testified that she had been drinking prior to the accident; that she was rendered unconscious when she struck the parked car and remembered nothing else until she regained consciousness after her automobile came to rest on the lawn of the house. Respondent was charged with and pleaded guilty to driving while impaired by intoxication.
The trial court charged the jury:
“ I further Charge you in that connection that a person who is injured while attempting to rescue another from peril in an emergency situation is not negligent merely on the ground that the rescue entails danger to himself.
‘1 The law has a high regard for human life and efforts to save it. Danger invites rescue. The impulse to respond to an urgent call for aid, without complete regard for one’s own .safety, is recognized as normal.
“ The law will not impute negligence to an effort to preserve life, unless made under such circumstances as would be rash or wanton.
“ Conduct is rash or wanton when it is undertaken in utter disregard of the consequences.
‘ ‘ If you find in this case that the plaintiff acted in an emergency situation to rescue Mrs. Martenson, or that she was in need of immediate aid or in peril, and that plaintiff’s conduct was not rash or wanton, then you may find that the plaintiff was not guilty of contributory negligence.”
The jury found for the plaintiff and awarded him a substantial judgment. The Appellate Division reversed on the law and the facts holding that the rescue doctrine was inapplicable to the facts in the instant case, and that once the doctrine had been *260 removed from the case a finding that the plaintiff was free from contributory negligence must necessarily fall.
In considering this case, a brief discussion of the development of the rescue doctrine in our State will help crystalize the rationale leading to our conclusion that the rescue doctrine is applicable.
The doctrine was first created to avoid a plaintiff being found contributorily negligent as a matter of law when he voluntarily placed himself in a perilous situation to prevent another person from suffering serious injury or death (Wagner v. International Ry. Co., 232 N. Y. 176; Eckert v. Long Is. R. R. Co., 43 N. Y. 502). This is not to say, however, that after a plaintiff has established the necessary elements for the implementation of the doctrine that he can no longer be found contributorily negligent. He must still show that in attempting the rescue he acted as a reasonable man under the circumstances.
The normal situation where the doctrine has been applied is where three persons are involved, i.e., one party by his culpable act has placed another person in a position of imminent peril which invites a third person, the rescuing plaintiff, to come to his aid. However, the doctrine has been expanded to encompass a two-party situation where the culpable party has placed himself in a perilous position which invites rescue (Carney v. Buyea, 271 App. Div. 338, mot. for lv. to app. den. 296 N. Y. 1056; Talbert v. Talbert, 22 Misc 2d 782).
It is also to be noted that the wisdom of hindsight is not determinative on the issue of the doctrine’s applicability. So long as the rescue attempted can be said to have been a reasonable „ course of conduct at the time, it is of no import that the danger was not as real as it appeared (Carney v. Buyea, supra).
It is evident, therefore, that neither the respondent’s having negligently brought about her own attempted rescue nor the absence of actual peril would preclude the doctrine’s application to the case at bar.
The majority below, however, found that the doctrine should not be applied, reasoning that the threat of peril, in the instant case, was merely “ imaginary and speculative ”, and, therefore, the issue of contributory negligence should not have gone to'the jury. This determination was erroneous.
*261 It is conceded that something more than a mere suspicion of danger to the life of another is requisite before the doctrine should be implemented. However, the applicability of the doctrine cannot be decided in vacuo. It must be viewed in light of all the facts and circumstances in each case.
If the plaintiff in the instant case had merely happened by some time after the respondent’s car had come to rest, we would agree that his conduct would have been based on mere speculation. In such circumstances, the doctrine not being applicable, it could be said that the plaintiff’s conduct constituted contributory negligence as a matter of law. Here, however, the plaintiff observed the entire occurrence and was in close proximity to it. Although, as respondent argues, the car had already come to rest before the plaintiff embarked upon his perilous journey across the highway, the immediate possibilities of fire and explosion and further injury to the defendant still existed. Under such circumstances, it cannot be said that reasonable men could reach but one conclusion and, therefore, the issue of “ whether plaintiff in going to the rescue, as he did, was foolhardy or reasonable in light of the emergency confronting him, were questions for the jury ” (Wagner v. International Ry. Co., supra, p. 182).
Although we have disposed of the major question raised on this appeal, there remains unanswered a subsidiary evidentiary question presented for our consideration.
While the plaintiff was observing the respondent’s vehicle meandering about the highway, he remarked to his wife, “ This person must be sick, must have had a heart attack ’ ’. The Trial Judge allowed the plaintiff to testify on direct examination that he made this statement. The majority of the court below was of the opinion that this statement was hearsay; that the spontaneous declaration exception to the rule against hearsay was not applicable and, therefore, the statement was inadmissible.
Inasmuch as this statement was not being offered for the truth of the facts asserted therein, it is unnecessary for us to consider whether this statement qualifies as a spontaneous declaration because it was admissible for an entirely different reason. The statement was not being introduced to prove that the defendant had had a heart attack or that she was sick but rather to shed *262 light on the plaintiff’s state of mind as to why he crossed the highway. Certainly, if it could be shown that plaintiff did not cross the highway with the intent to render assistance to the defendant, but rather for an entirely unrelated purpose, then no cause of action against this defendant would exist. Therefore, the plaintiff’s state of mind being in issue, statements he made to evidence that state of mind should not be excluded. (See Richardson, Evidence [Prince, 9th ed.], § 211.)
Accordingly, the order appealed from should be reversed and a new trial ordered.
Chief Judge Fuld and Judges Burke, Bergan, Keating, Breitel and Jasen concur.
Order reversed and new trial granted, with costs to abide the event.

 The Appellate Division reversed the ¡judgment against defendant Sam and ordered a new trial. Sam did not appeal from that determination.