■ JUAN VILLOCH, Appellant, v CLAES LINDGREN, Respondent, et al., Defendants. [703 NYS2d 131] —Judgment, Supreme Court, Bronx County (Joseph Giamboi, J.), entered May 18, 1999, which, *inter alia*, granted judgment to defendant-respondent Claes Lindgren during trial, after the close of evidence, and dismissed the complaint, unanimously reversed, on the law, without costs, the complaint reinstated and the matter remanded for a new trial.

Testimony adduced at trial reveals that on June 6, 1992, plaintiff Juan Villoch was operating a vehicle southbound on the Bruckner Expressway at approximately 3:30 A.M. with his cousin Raul Cales and Cales's girlfriend as passengers. At that time, Villoch observed a Saab stopped in the left lane facing

northbound. The Saab, which was driven by Lindgren, had no lights on, was smoking, and had severe damage to the front end. The roadway at the time was poorly lit and wet, and visibility was reduced by fog and drizzle.

Villoch parked his car in the left lane, with its headlights and hazard lights on, so that the left lane was "blockaded" and other oncoming cars would see his car before striking the Saab. Villoch and Cales then exited their vehicle and as the two men approached the Saab, they noticed Lindgren, who was pale, had his eyes closed, and had one hand on the steering wheel with his head tilted back. Initially, Lindgren was unresponsive, although he finally "mumbled" that he was all right.

Villoch and Cales tried to push the Saab off the road, but were unsuccessful, and at approximately the same time, a police car arrived and pulled over on the right hand shoulder or in the right lane. The officer driving the car waved Villoch and Cales over to him and the men complied. In the interim, Lindgren had gotten out of the Saab and followed Villoch and Cales across the roadway to the police car, where they stood in the roadway and spoke to the officer. A few seconds after the conversation had begun, a car driven by defendant Shahzad Mirza "slammed" into the police car and then hit Villoch and Lindgren.

At trial, Dr. Thomas J. Manning, a toxicology expert, testified that Lindgren's blood alcohol level at the time of the accident was between .22 and .24%, which is the equivalent of 12 drinks and which rendered him "grossly intoxicated" and unable to safely operate a motor vehicle.

After Villoch rested, Lindgren moved to dismiss Villoch's claims, but the trial court reserved decision. Following the completion of evidence, Lindgren renewed his application, which was granted by the trial court on the ground that the theory of "danger invites rescue" was inapplicable to this action. We disagree and reverse.

Initially, we note that a court, in determining whether a plaintiff has made out a prima facie case for submission to the jury, must be " 'guided by the rule that the facts adduced at the trial are to be considered in the aspect most favorable to [plaintiff] and that [plaintiff is] entitled to the benefit of every favorable inference which can reasonably be drawn from those facts' " (*McCummings v New York City Tr. Auth.*, 81 NY2d 923, 926, *cert denied* 510 US 991, quoting *Sagorsky v Malyon*, 307 NY 584, 586). Moreover, negligence cases, by their nature, do not normally lend themselves to summary dismissal since the question of negligence, even if the parties agree as to the

underlying facts, is a question for jury determination (*McCummings v New York City Tr. Auth.*, *supra*, at 926; *Ugarriza v Schmieder*, 46 NY2d 471, 474).

The doctrine of "danger invites rescue" was eloquently defined by Judge Cardozo almost 80 years ago: "Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperilled victim; it is a wrong also to his rescuer. The state that leaves an opening in a bridge is liable to the child that falls into the stream, but liable also to the parent who plunges to its aid (*Gibney v State of N. Y.*, 37 N. Y. 1). The railroad company whose train approaches without signal is a wrongdoer toward the traveler surprised between the rails, but a wrongdoer also to the bystander who drags him from the path" (*Wagner v International Ry. Co.*, 232 NY 176, 180).

The doctrine was subsequently expanded to create a duty of care toward a potential rescuer where a culpable party has placed another person in a position of imminent peril which invites a third party, the rescuing plaintiff, to come to his aid, and also to encompass situations where the culpable party has placed himself or herself in a perilous situation which invites rescue (*Provenzo v Sam*, 23 NY2d 256, 260; *Ha-Sidi v South Country Cent. School Dist.*, 148 AD2d 580, 582).

In this matter, plaintiff came upon a damaged, smoking, automobile facing the wrong way in the left lane of a high-speed highway. The car had no lights on, visibility was poor and the roadway was slick and not well lit. Plaintiff placed his car, with its headlights and hazard lights on, between the disabled car and oncoming traffic, and attempted to render aid to Lindgren and remove him, and other drivers, from harm's way. Plaintiff was then summoned by a police officer and was subsequently injured, and his testimony indicates that the entire sequence of events took five minutes or less.

It is clear, viewing the evidence in a manner which gives the most favorable inferences to plaintiff, that Villoch was in an emergency situation and that there was an "unbroken continuity" (*Wagner v International Ry. Co.*, *supra*, at 181) between his discovery of the disabled automobile and its semiconscious, unresponsive driver, the effort to avert further injury, and the ultimate consequences to plaintiff. We do not find, as did the trial court, that the accidents were so attenuated as to break the causal connection between Lindgren's alleged negligence

and Villoch's injuries. To the extent that the Trial Judge found, and defendant now contends, that in order for the doctrine of danger invites rescue to apply, plaintiff had to be on the scene at the time of the occurrence of Lindgren's accident, we find no basis for this proposition (*see, Rucker v Andress*, 38 AD2d 684). Concur—Sullivan, P. J., Nardelli, Tom, Lerner and Andrias, JJ.