LILLIAN VELAZQUEZ, Appellant, v NEW YORK CITY HEALTH AND HOSPITALS CORPORATION et al., Respondents. [886 NYS2d 129]—

Judgment, Supreme Court, New York County (Nicholas Figueroa, J.), entered October 23, 2007, which dismissed the complaint pursuant to a trial order granting defendants' motion at the conclusion of plaintiff's case for judgment as a matter of law, unanimously reversed, on the law, without costs, the motion denied, the complaint reinstated, and the case remanded for a new trial.

Plaintiff, a home attendant, allegedly was injured in a mishap that occurred as her client was carried down a stairway by two emergency medical services (EMS) workers employed by the municipal defendants. The EMS workers (Awilda Gomez and Jacqueline Martinez) were responding to the 911 call plaintiff placed when her client, a severely disabled 85-year-old woman, suffered a seizure. Plaintiff testified that the EMS workers said that they were at the end of a long shift, and one of them (Ms. Gomez) appeared to be drowsy. Plaintiff suggested that the EMS workers call for help moving the client, who weighed about 200 pounds and shook due to her Parkinson's disease. Although the EMS workers had the option to call for help, they told plaintiff that they would take the client down the stairs themselves. The EMS workers moved the client while she was strapped into a chair, with her oxygen tank placed in her lap. Ms. Martinez was in front of the chair, lifting it from the bottom with both hands, while Ms. Gomez was behind the chair, lifting it by the handles on the back. According to plaintiff's testimony, as the EMS workers were carrying the client down the stairs in this fashion and plaintiff was locking the door to the apartment, plaintiff

heard Ms. Gomez call out, "Help, I'm falling." Plaintiff ran to the stairway to help and grabbed one of the back handles of the chair, whereupon Ms. Gomez "let go of the chair." The next thing plaintiff knew, she was lying on the landing at the bottom the stairs, with her client (who was not injured) strapped into the chair on top of her. The deposition testimony of the EMS workers (which was read into the record) differed; Ms. Gomez claimed that plaintiff had bumped into the chair and caused the fall when she tripped on a mat, while Ms. Martinez attributed the accident to Ms. Gomez's slipping, but said that plaintiff was not involved in it.

At the jury trial of this action, defendants moved for judgment as a matter of law at the close of plaintiff's case (see CPLR 4401) on the grounds that (1) defendants were protected from liability by governmental immunity, (2) even if governmental immunity did not apply, defendants' employees, the EMS workers, did not owe plaintiff (as opposed to her client) any duty of care, and, in any event, (3) plaintiff failed to present any evidence of negligence by defendants' employees. The court granted the motion and, upon plaintiff's motion for reargument, adhered to that determination. Upon plaintiff's appeal from the ensuing judgment, we reverse, reinstate the complaint, and remand for a new trial.

To begin, the doctrine of governmental immunity does not insulate defendants from liability for the negligence of their employees, if any, in carrying an ill person down a stairway, as such an act is plainly ministerial in nature, rather than discretionary or quasi-judicial (see Haddock v City of New York, 75 NY2d 478, 484 [1990]; see also Fonville v New York City Health & Hosps. Corp., 300 AD2d 623, 624 [2002] [although plaintiff stated no claim based on the alleged failure by EMS to timely respond to a call to assist decedent, "assuming EMS workers undertook the affirmative action to treat the decedent, they were required to do so with due care"]; Schempp v City of New York, 25 AD2d 649 [1966], affd 19 NY2d 728 [1967] [reinstating jury verdict for plaintiff in action alleging, inter alia, that "the city was negligent in the manner of transporting the decedent from his apartment to the ambulance"]).

Assuming that there was evidence in this case that negligence by the EMS workers endangered plaintiff's client (a point discussed below), plaintiff is entitled to recover from defendant for any injury she incurred in attempting to rescue the client from that danger. Under the "danger invites rescue" doctrine, there exists "a duty of care toward a potential rescuer where a culpable party has placed another person in a position of im-

minent peril which invites a third party, the rescuing plaintiff, to come to [the] aid" of the imperiled person (*Villoch v Lindgren*, 269 AD2d 271, 273 [2000]; *see also Provenzo v Sam*, 23 NY2d 256, 260 [1968]). "The doctrine . . . appl[ies] . . . where a potential rescuer reasonably believes that another is in peril," which "determination is made on the facts and circumstances of each case" (*Gifford v Haller*, 273 AD2d 751, 752 [2000] [citations omitted]). Contrary to defendants' argument that they had no "special relationship" with plaintiff from which a duty of care could arise, the assumption of a duty of care toward plaintiff's client by the EMS workers (when they undertook to carry her down the stairs) gave rise to a duty of care to plaintiff when she sought to rescue the client from the peril in which the latter was allegedly placed by the alleged negligence of the EMS workers (*see Wagner v International Ry. Co.*, 232 NY 176, 180 [1921] ["The wrong that imperils life is a wrong to the imperilled victim; it is a wrong also to h(er) rescuer"]).

Finally, bearing in mind that the determination of whether plaintiff has made out a prima facie case is " 'guided by the rule that the facts adduced at the trial are to be considered in the aspect most favorable to [plaintiff] and that [plaintiff is] entitled to the benefit of every favorable inference which can reasonably be drawn from those facts' " (*McCummings v New York City Tr. Auth.*, 81 NY2d 923, 926 [1993], *cert denied* 510 US 991 [1993], quoting *Sagorsky v Malyon*, 307 NY 584, 586 [1954]; *see also Villoch v Lindgren*, 269 AD2d at 272), we conclude that the evidence presented by plaintiff gave rise to an issue of fact as to whether negligence by the EMS workers contributed to the accident in question. Based on the evidence in the trial record, the jury, had it credited plaintiff's account of how the accident occurred, could reasonably have concluded that the EMS workers were negligent in attempting to carry plaintiff's client down the stairs themselves rather than calling their dispatcher to request assistance. Since determining whether the EMS workers acted with due care in this regard "required only consideration of [their] common sense and judgment" in undertaking to carry a person of the client's obviously heavy bulk (along with her oxygen tank) down the stairs, plaintiff was not required to offer expert testimony to reach the jury on the issue of negligence (*Reardon v Presbyterian Hosp. in City of N.Y.*, 292 AD2d 235, 237 [2002] [expert evidence was not required to reach the jury on the question of whether physician was negligent in helping patient off an examining table by himself, without the assistance of another hospital employee]). Of course, we reiterate that, on this record, whether the accident happened in the manner described by plaintiff is also a question for the factfinder. Concur—Mazzarelli, J.P., Friedman, Moskowitz and Acosta, JJ.