Leonard v City of New York (2023 NY Slip Op 02589)

BODY {
font-family : "Times New Roman", Times, serif;
font-size : larger;
}

P {
line-height: 150%;
text-indent: 2em
}

Leonard v City of New York

2023 NY Slip Op 02589

Decided on May 11, 2023

Appellate Division, First Department

MOULTON, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: May 11, 2023
SUPREME COURT, APPELLATE DIVISION
First Judicial Department
Barbara R. Kapnick
Cynthia S. Kern, Ellen Gesmer, Peter H. Moulton, John R. Higgitt


Index No. 24893/15 Appeal No. 17543 Case No. 2022-03557 

[*1]Brian Leonard, Plaintiff-Appellant,
vThe City of New York et al., Defendants-Respondents, GEB-DB Joint Venture et al., Defendants. [And a Third-Party Action]

Plaintiff appeals from an order of the Supreme Court, Bronx County (Lucindo Suarez, J.), entered February 10, 2022, which granted defendants the City of New York and New York City Transit Authority's summary judgment motion dismissing the Labor Law § 241(6) claim as against them.

Law Office of Niall MacGiollabhui, New York (Niall Macgiollabhui of counsel), for appellant.
Wilson Elser Moskowitz Edelman & Dicker LLP, New York (Patrick J. Lawless of counsel), for respondents.

MOULTON, J.
This appeal raises the issue of whether the "danger invites rescue doctrine" applies to a personal injury claim premised on Labor Law § 241(6). Despite the longevity of both the doctrine and the cause of action, this issue appears to be a novel one in the First Department. We hold that the doctrine applies to the cause of action, and find that the record presents issues of fact as to whether plaintiff's attempt to rescue his coworker was reasonable under the relevant circumstances.Relevant Facts
The facts that give rise to plaintiff's claim are essentially undisputed. Plaintiff alleges that he was injured while working for nonparty DeBoe Construction Corp. on a project to reconstruct sewers and water mains pursuant to a contract with defendant the City of New York.[FN1] On December 31, 2014, plaintiff avers that he was standing alongside a trench when the trench wall collapsed. A heavy steel beam that had been supporting the trench walls fell four to five feet onto a worker's leg, causing the worker to cry out. Without hesitating, plaintiff climbed into the trench to aid his coworker. As plaintiff attempted to lift the beam off of his coworker, plaintiff "felt a big pop" in his lower back and "kind of blacked out" from the pain. Plaintiff asserts that he suffered severe lower back injuries that required extensive medical attention, including multiple surgeries, injections, and therapy.
Plaintiff filed suit, alleging, as relevant here, violations of Labor Law § 241(6) predicated on Industrial Code (12 NYCRR) §§ 23-4.2(a) and 23-4.4(a), (b), (c), and (f), which govern the shoring of trenches.
Defendants the City of New York and the New York City Transit Authority moved for summary judgment, arguing that no one in authority directed plaintiff to lift the beam off his coworker and therefore his choice to do so was the sole proximate cause of his injuries. Defendants also argued that plaintiff's injury occurred after the trench shoring failed, and thus did not arise from a violation of any of the cited Industrial Code provisions that could provide a necessary predicate to a claim under Labor Law § 241(6).
In opposition, plaintiff argued that there was a question of fact as to whether the danger invites rescue doctrine (referred to herein as the rescue doctrine) applies to his Labor Law § 241(6) claim. Under the rescue doctrine, plaintiff argued, a wrong to his coworker was a wrong to him for which defendants were liable.
Supreme Court granted defendants' motion [*2]for summary judgment, asserting that there was a lack of causal connection between the collapse of the trench wall, which is the subject of the relevant Industrial Code sections cited by plaintiff, and plaintiff's injury, which arose from his attempt to lift the steel bar off of his coworker after the trench wall collapsed. The court then rejected any application of the rescue doctrine. Supreme Court noted that the rescue doctrine was announced at a time when plaintiffs could be nonsuited for any contributory negligence and before the adoption of comparative negligence, which allows the allocation of fault among the persons causing an injury. The court concluded that "[a]ny legal issues concerning [p]laintiff's contributory negligence played no part in this court's determination to dismiss Plaintiff's Labor Law § 241(6) claim, thus, this court finds the 'danger invites rescue' doctrine wholly inapplicable to the facts at bar."The Rescue Doctrine
The rescue doctrine has its origin in Eckert v Long Is. R.R. Co. (43 NY 502 [1871]). In that case, the plaintiff's decedent was crushed by an oncoming train while rescuing a child from the tracks. The Eckert Court noted that voluntary exposure to a situation likely to cause serious injury is usually "negligence, which will preclude recovery" for that injury (Eckert, 43 NY at 506). However, the Court explained, when such "exposure is for the purpose of saving life, it is not wrongful, and therefore not negligent unless such [exposure can] be regarded [as] either rash or reckless" (id.). This is so because the "law has so high a regard for human life that it will not impute negligence to an effort to preserve it" (id.).
Judge Cardozo, then sitting on the Court of Appeals, distilled the doctrine in Wagner v International. Ry. Co. (232 NY 176 [1921]). In that case, the plaintiff sustained injuries while searching for his cousin, who was thrown from a train operated by the defendant (id. at 179). Cardozo, speaking for the Court of Appeals, found that the plaintiff could recover for the defendant's negligence towards the cousin:
"Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperiled victim; it is a wrong also to his rescuer" (id. at 180).
Cardozo's formulation of the doctrine has proven durable. New York's Pattern Jury Instruction concerning "Duty to a Third Party" (PJI 2:13) begins "[t]here is a principle of law that danger invites rescue."
In sum, the rescue doctrine establishes a "duty of care toward a potential rescuer where a culpable party has placed another person in a position of imminent peril which invites a third party, the rescuing plaintiff, to come to the aid of the imperiled person" (Velazquez v New York City Health & Hosps. Corp., [*3]65 AD3d 981, 982-983 [1st Dept 2009] [internal quotation marks omitted]). Of course, more than a "mere suspicion of danger to the life of another is requisite before the doctrine should be implemented" (Provenzo v Sam, 23 NY2d 256, 260 [1968]). "[A]pplicability of the doctrine . . . must be viewed in light of all the facts and circumstances in each case" (id.). Since the attempted rescue need only be a "reasonable course of conduct at the time" it is taken, it is "of no import that the danger was not as real as it appeared" (id. ["the wisdom of hindsight is not determinative of the doctrine's applicability"]; see also Wagner, 232 NY at 181 ["It is enough that the act . . . is the child of the occasion."]). Whether a plaintiff's actions are reasonable "in the situation [is] to be determined by the jury" (Wagner, 232 NY at 181; see also PJI 2:41).Labor Law § 241(6)
The purpose of Labor Law § 241(6) is "to protect workers engaged in duties connected to the inherently hazardous work of construction, excavation or demolition" (Nagel v D & R Realty Corp., 99 NY2d 98, 101 [2002]).
As relevant here, Labor Law § 241 states:
"[a]ll contractors and owners[,] when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements: . . .
(6) All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places" (emphasis added).
"[T]o state a claim under section 241(6), plaintiff must allege that defendant violated an Industrial Code regulation that sets forth a specific standard of conduct and is not simply a recitation of common-law safety principles" (Toussaint v Port Auth. of N.Y. & N.J., 38 NY3d 89, 94 [2022] [internal quotation marks and brackets omitted]; see also Misicki v Caradonna, 12 NY3d 511, 515 [2009]).
The statute incentivizes property owners and contractors to create safe workplaces by imposing a nondelegable duty to "'provide reasonable and adequate protection and safety' for workers" (Toussaint, 38 NY3d at 93, quoting Labor Law § 241(6); see also Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 501-502 [1993]). Section 241(6) subjects owners and contractors to liability for failing to adhere to required safety standards whether or not they themselves are negligent. Supervision of the work, control of the worksite, or actual or constructive notice of a violation of the Industrial Code are not necessary to impose vicarious liability against owners and general contractors, so long as some actor in the construction chain was negligent (see generally Rizutto v L.A. Wenger Contr. Co., 91 NY2d 343, 350-352 [1998] ["this Court has consistently rejected the notion that" Section 241(6) imposes "absolute liability irrespective of the absence of some negligent [*4]act"]). "[B]reach of a duty imposed by a rule in the [Industrial] Code is merely some evidence for the factfinder to consider on the question of a defendant's negligence" (Misicki, 12 NY3d at 515; see also Rizutto, 91 NY2d at 351).Discussion
Preliminarily, the parties do not dispute that Industrial Code §§ 23-4.2(a) and 23-4.4(a), (b), (c), and (f), all of which govern the configuration and shoring of trenches and other excavations, are sufficiently specific to support a Labor Law § 241(6) claim or that defendants violated these provisions in this case. The parties also do not dispute that plaintiff is a worker within the scope of the Labor Law § 241(6). Additionally, the parties do not dispute that plaintiff was not in the trench when it collapsed or that he voluntarily entered the trench after it collapsed.
Defendants argue that Supreme Court correctly rejected plaintiff's Labor Law § 241(6) claim because plaintiff himself was not injured by any violation of any of the cited Industrial Code sections regarding the shoring of trenches. However, Wagner and the many cases that have followed in its wake do not require that the rescuer be subjected to the same harm that necessitated a rescue. Because plaintiff's coworker was allegedly imperiled by a violation of one or more of the cited Industrial Code sections, the rescue doctrine does not require plaintiff to have also been injured in the same manner.
Next, defendants argue that the nondelegable duty imposed by Section 241(6) on owners and contractors, which exposes them to liability even if they themselves were not negligent, means that the rescue doctrine is not applicable. While it is correct that the rescue doctrine was founded in common-law negligence, the Court of Appeals has not limited the rescue doctrine to that context. In Guarino v Mine Safety Appliance Co. (25 NY2d 460 [1969]), the Court of Appeals applied the doctrine to a breach of warranty cause of action. Judge Jasen, speaking for a majority of the Court, held:
"We do not believe that the theory of the action, whether it be negligence or breach of warranty, is significant where the doctrine of 'danger invites rescue' applies. A breach of warranty and an act of negligence are each clearly wrongful acts. Both terms are synonymous as regards fixation of liability, differing primarily in their requirements of proof" (id. at 464).
Both the Second and Fourth Departments have applied the rescue doctrine to Labor Law § 241(6) claims. In Del Vecchio v State of New York (246 AD2d 498 [2d Dept 1998]), the Second Department foreclosed application of the rescue doctrine to a Section 240(1) claim, asserting that doing so would expand the owner's liability beyond the statute's intended scope (id. at 500). However, the Second Department stated that the "claimants still have viable claims . . . to recover damages for common-law negligence and for violations of other provisions of the Labor Law, and are not precluded from asserting the danger [*5]invites rescue doctrine in connection with those claims" (id.). Among the Labor Law claims left standing was one under Section 241(6). In Butler v County of Chautauqua (261 AD2d 855 [4th Dept 1999]), the worker-plaintiff was injured when a roller ran over his foot while he was warning a pedestrian to avoid the roller's path. The Fourth Department held that even though the pertinent Industrial Code provision was "for the protection of pedestrians rather than workers, there is a question of fact whether plaintiff may recover for the alleged breach of the County's duty to pedestrians under the 'danger invites rescue' doctrine" (id. at 856).
Finally, defendants invoke Supreme Court's reasoning that the rescue doctrine was developed when a plaintiff's contributary negligence could foreclose any claim, and therefore is inapposite where there is no finding of fault on the plaintiff's part. It is not clear why this historical fact would be dispositive here. The rescue doctrine has continued to be deployed after New York State adopted a comparative negligence regime in personal injury cases (see CPLR 1411 [codifying comparative negligence in New York in 1975]; Calderon v Cruzate, 175 AD3d 644, 647-648 [2d Dept 2019]; Velazquez, 65 AD3d at 982-983; Butler, 261 AD2d at 856).
The rescue doctrine is based on an assumption about human behavior: bystanders who observe an incident that places a person in peril will be impelled to rescue that person. That assumption has proved enduring in our law. Indeed, workers who observe a coworker in peril may feel a heightened obligation to assist that coworker, with whom the rescuer may have a bond of shared experience and endeavor. The Court of Appeals has recognized the intuitive power of this proposition (see Guarino, 25 NY2d at 464; see also id. at 466 [Scileppi, J., concurring] [noting that "the plaintiff's rescuers [were] part of a team of workers all similarly situated in a common effort"]). Fundamentally, Labor Law § 241(6) is designed to encourage owners and contractors to comply with the state's Industrial Code. By protecting all workers placed at risk by noncompliance with the Industrial Code, including workers who seek to rescue their coworkers, the Labor Law's central purpose is thus advanced.[FN2]
While we find that the rescue doctrine can apply to claims under Labor Law § 241(6), it is for the finder of fact to determine whether plaintiff's rescue attempt in this case was a "reasonable course of conduct at the time" (Provenzo, 23 NY2d at 260).
Accordingly, the order of the Supreme Court, Bronx County (Lucindo Suarez, J.), entered February 10, 2022, which granted defendants the City of New York and New York City Transit Authority's summary judgment motion dismissing the Labor Law § 241(6) claim as against them, should be reversed, on the law, without costs, and the motion denied.
Order, Supreme Court, Bronx County (Lucindo Suarez, J.), entered February 10, 2022, reversed, on the law, without costs, and the [*6]motion denied.
Opinion by Moulton, J. All concur.
Kapnick, J.P., Kern, Gesmer, Moulton, Higgitt, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: May 11, 2023
Footnotes

Footnote 1:By stipulation dated October 5, 2020, plaintiff discontinued with prejudice his claims against defendants GEB-DB Joint Venture, D&B Engineers and Architects PC, Gibbons, Esposito and Boyce Engineering, and third-party defendant KAG Engineering, PLLC.

Footnote 2:Indeed, greater loss avoidance may result from recognizing—and protecting—the impulse to rescue, as coworkers on a construction site are likely the people most able to respond quickly and thereby forestall or mitigate further injury to the person(s) initially injured in a workplace accident, and to others potentially imperiled by the condition giving rise to the accident (see Richard A. Posner, Cardozo: A Study in Reputation 102 [1990]).