**Leon v DDG 100 Franklin LLC**

2025 NY Slip Op 32044(U)

June 9, 2025

Supreme Court, New York County

Docket Number: Index No. 152361/2018

Judge: Arlene P. Bluth

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     **HON. ARLENE P. BLUTH**      PART      **14**

*Justice*

-------------------------------------------------------------------------------X

JONATHAN LEON, LILIANA LEON,

            Plaintiffs,

- v -

DDG 100 FRANKLIN LLC, DDG PARTNERS LLC,

            Defendants.

-------------------------------------------------------------------------------X

DDG 100 FRANKLIN LLC

            Plaintiff,

       -against-

FORWARD MECHANICAL, INC.

            Defendant.

-------------------------------------------------------------------------------X

DDG 100 FRANKLIN LLC

            Plaintiff,

       -against-

EXTREME CONCRETE DESIGNS

            Defendant.

-------------------------------------------------------------------------------X

FORWARD MECHANICAL, INC.

            Plaintiff,

       -against-

DDG PARTNERS LLC, DDG DEVELOPMENT LLC

            Defendants.

-------------------------------------------------------------------------------X

INDEX NO.      152361/2018

MOTION DATE      04/10/2025

MOTION SEQ. NO.      004, 005

**DECISION + ORDER ON MOTION**

Third-Party
Index No. 595216/2019

Second Third-Party
Index No. 595445/2021

Third Third-Party
Index No. 595323/2022

The following e-filed documents, listed by NYSCEF document number (Motion 004) 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204,

**152361/2018   LEON, JONATHAN vs. DDG 100 FRANKLIN LLC**        **Page 1 of 18**
**Motion No. 004 005**

[* 1]

205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 216, 218, 222, 223, 224, 228, 229, 230, 231, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 244, 245, 246, 247, 266, 269, 270, 271, 272, 274, 275, 276, 277, 278, 279, 280, 281, 284, 286

were read on this motion to/for         JUDGMENT – SUMMARY       .

The following e-filed documents, listed by NYSCEF document number (Motion 005) 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 217, 220, 221, 225, 226, 227, 248, 249, 250, 251, 252, 253, 254, 255, 256, 257, 258, 259, 260, 261, 262, 263, 264, 265, 267, 268, 273, 282, 283, 285, 287

were read on this motion to/for         JUDGMENT – SUMMARY       .

Motion Sequences 004 and 005 are consolidated for disposition and decided as described below.

**Background**

In this Labor Law case, plaintiff Jonathan Leon, while employed by plumbing contractor Forward Mechanical, Inc. ("Forward"), was injured while working at a construction site at 100 Franklin Street in Manhattan on March 12, 2018. Plaintiff was hit in the face when the cap of an air-pressurized standpipe burst off while plaintiff was looking down through a hole on the fifth floor. The pipe was about a foot below the floor. Plaintiff thought the pipe was, and the pipe should have been, depressurized. Plaintiff insists he was instructed by Forward's foreman to stand by the hole to make sure nothing fell into the pipe once the cap was removed; once the cap was removed, the rest of the team from Forward was supposed to come up from the fourth floor, join plaintiff on the fifth floor, and run the pipe up through the hole.

Plaintiff's uncontroverted testimony establishes that there was construction debris – chunks of wood, metal, rocks, and concrete – by the hole, so he pushed the debris two or three feet away. It was taking longer than usual to take the cap off the pipe, so plaintiff peered down the hole to see what was happening and to communicate with his co-workers through the hole.

**152361/2018   LEON, JONATHAN vs. DDG 100 FRANKLIN LLC**
**Motion No.  004 005**

**Page 2 of 18**

2 of 18

At that point the cap burst off the pipe, and plaintiff was struck in the face by the cap. Plaintiff then stumbled backwards, tripped over construction debris, hit his head, and lost consciousness. Plaintiff was not wearing protective eye gear at the time of the accident. He sustained a partial loss of vision from being hit in the face with the cap, and he sustained injuries to his head, neck, right side, and hip when he fell.

There were no witnesses to or video footage of the accident. No investigation report has been provided, and there are no accident-scene photographs from the day the accident occurred. It is undisputed that Forward's work on the sprinkler system resulted in the pressured pipe bursting. However, there is a dispute regarding who was responsible for the debris that plaintiff tripped over, whether it was an Extreme Concrete Designs ("Extreme") working floor and therefore Extreme should have cleared the debris, and whether the owner DDG 100 Franklin LLC ("DDG") had notice of the debris.

Plaintiff Leon and his wife ("plaintiffs") bring claims against DDG pursuant to Labor Law §§ 200 and 241(6) as well as for common-law negligence. Plaintiffs' Labor Law § 241(6) claim relies on DDG's alleged violations of Industrial Code (12 NYCRR) §§ 23-1.7(3), 23-1.8, and 23-1.25. DDG owned the property but did not technically employ anybody; among the three DDG parties – DDG 100, DDG Partners LLC, DDG Development LLC – only DDG Partners had employees and produced witnesses.

DDG brings two third-party actions. DDG's first third-party action asserts claims against Forward, plaintiff's employer and the subcontractor responsible for piping and sprinkler work at the time of the accident, for contractual indemnification and breach of agreement to procure liability insurance. DDG's second third-party action is against Extreme, a subcontractor responsible for constructing the superstructure including concrete work; it asserts claims for

**152361/2018   LEON, JONATHAN vs. DDG 100 FRANKLIN LLC**
**Motion No.  004 005**

**Page 3 of 18**

[* 3]

contractual indemnification, common-law indemnification and contribution, and breach of contract for failure to procure insurance.

DDG brings MS 004 and seeks 1) summary judgment dismissing plaintiffs' claims pursuant to NY Labor Law §§ 200 and 241(6) as well as for common-law negligence, 2) in the alternative, summary judgment against Extreme for contractual indemnification, common-law indemnification, and breach of contract for failure to procure insurance, 3) summary judgment on its claim for contractual indemnification against Forward to the extent that the coverage afforded to DDG under Forward's insurance policies are exhausted, and 4) dismissing Extreme's and Forward's counterclaims against DDG which seek common-law indemnification and contribution.

Plaintiffs cross-move for summary judgment granting their 241(6) claim and contend that there are questions of fact surrounding their Labor Law § 200 and common-law negligence claims which preclude summary judgment.

Forward opposes the part of DDG's motion seeking summary judgment against Forward for contractual indemnification and opposes plaintiffs' cross-motion seeking summary judgment on their 241(6) claim.

**Discussion**

To be entitled to the remedy of summary judgment, the moving party "must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact from the case" (*Winegrad v New York Univ. Med. Ctr.,* 64 NY2d 851, 853, 487 NYS2d 316 [1985]). The failure to make such a prima facie showing requires denial of the motion, regardless of the sufficiency of any opposing papers (*id*.). When deciding a summary judgment motion, the court views the alleged facts in the light

**152361/2018   LEON, JONATHAN vs. DDG 100 FRANKLIN LLC**
**Motion No.  004 005**

**Page 4 of 18**

most favorable to the non-moving party (*Sosa v 46th St. Dev. LLC*, 101 AD3d 490, 492 [1st Dept 2012]).

Once a movant meets its initial burden, the burden shifts to the opponent, who must then produce sufficient evidence to establish the existence of a triable issue of fact (*Zuckerman v City of New York,* 49 NY2d 557, 560, 427 NYS2d 595 [1980]). The court's task in deciding a summary judgment motion is to determine whether there are bona fide issues of fact and not to delve into or resolve issues of credibility (*Vega v Restani Constr. Corp.*, 18 NY3d 499, 505, 942 NYS2d 13 [2012]). If the court is unsure whether a triable issue of fact exists, or can reasonably conclude that fact is arguable, the motion must be denied (*Tronlone v Lac d'Amiante Du Quebec, Ltee,* 297 AD2d 528, 528-29, 747 NYS2d 79 [1st Dept 2002], *affd* 99 NY2d 647, 760 NYS2d 96 [2003]).

Plaintiff's Common-Law Negligence and Labor Law § 200 Claims

Labor Law § 200 "codifies landowners' and general contractors' common-law duty to maintain a safe workplace" (*Ross v Curtis-Palmer Hydro-Electric Co.*, 81 NY3d 494, 505, 601 NYS2d 49 [1993]). "[R]ecovery against the owner or general contractor cannot be had unless it is shown that the party to be charged exercised some supervisory control over the operation . . . [A]n owner or general contractor should not be held responsible for the negligent acts of others over whom the owner or general contractor had no direction or control" (*id.* [internal quotations and citation omitted]).

"Claims for personal injury under this statute and the common-law fall under two broad categories: those arising from an alleged defect or dangerous condition existing on the premises and those arising from the manner in which the work was performed" (*Cappabianca v Skanska*

**152361/2018   LEON, JONATHAN vs. DDG 100 FRANKLIN LLC**
**Motion No.  004 005**

**Page 5 of 18**

5 of 18

*USA Bldg. Inc.*, 99 AD3d 139, 143-44, 950 NYS2d 35 [1st Dept 2012]). "Where an existing defect or dangerous condition caused the injury, liability attaches if the owner or general contractor created the condition or had actual or constructive notice of it" (*id.* at 144).

Plaintiffs argue that this is a dangerous condition case and claim there is an issue of fact concerning whether DDG had constructive notice which precludes summary judgment dismissing this cause of action.

Plaintiff testified he had observed the debris on the fifth floor on the day before the accident date (NYSCEF Doc. No. 231 at 71-76). He further testified that the clean-up crew was not doing their job (*id.* at 171) and that debris was a recurring condition at the job site (NYSCEF Doc. No. 232 at 239). DDG does not point to any testimony that refutes this, only arguing that none of the higher-ups specifically recalled issues with debris and were not aware of any complaints about the debris. DDG Senior Vice President Ridoutt testified that he had observed debris at the job site, although he considered it "an acceptable amount" and that he did "nothing" when he observed the debris (NYSCEF Doc. No. 198 at 79). Ridoutt also confirmed that Extreme generated "a lot" of debris, specifically lumber (*id.* at 86). Ridoutt further testified that DDG's project manager, Jarrod Morris, and site superintendent, Joel Carrico, both of whom were at the site on the day of the accident, were present at the site every day (*id.* at 45-49). When Joseph Milohnic, part owner of Forward, was asked if he noticed any concrete debris on the ground in the area where his employees were working, he testified that "…there is always something on the ground. I mean, I don't recall specifically, but, you know, it's not out of the realm to see concrete debris or something on a construction site" (NYSCEF Doc. No. 197 at 59).

Plaintiff's uncontroverted testimony contends that there was a persistent issue with debris, and there is a question of fact about whether DDG had constructive notice of the debris.

**152361/2018   LEON, JONATHAN vs. DDG 100 FRANKLIN LLC**
**Motion No.  004 005**

**Page 6 of 18**

A factfinder could conclude that the purported recurring debris issue provided sufficient notice for DDG such that they should have ensured a safe work environment. The Court therefore denies the part of DDG's motion which seeks summary judgment dismissing plaintiff's Labor Law § 200 and common-law negligence causes of action.

Plaintiffs' Labor Law § 241(6) Claim

"The duty to comply with the Commissioner's safety rules, which are set out in the Industrial Code (12 NYCRR), is nondelegable. In order to support a claim under section 241(6) . . . the particular provision relied upon by a plaintiff must mandate compliance with concrete specifications and not simply declare general safety standards or reiterate common-law principles" (*Misicki v Caradonna*, 12 NY3d 511, 515, 882 NYS2d 375 [2009]). "The regulation must also be applicable to the facts and be the proximate cause of the plaintiff's injury" *(Buckley v Columbia Grammar and Preparatory*, 44 AD3d 263, 271, 841 NYS2d 249 [1st Dept 2007]).

"Section 241(6) subjects owners and contractors to liability for failing to adhere to required safety standards whether or not they themselves are negligent. Supervision of the work, control of the worksite, or actual or constructive notice of a violation of the Industrial Code are not necessary to impose vicarious liability against owners and general contractors, so long as some actor in the construction chain was negligent" (*Leonard v City of New York*, 216 AD3d 51, 55-56, 188 NYS3d 471 [1st Dept 2023]). Furthermore, "[t]here may be more than one proximate cause of a plaintiff's injuries" (*Gray v Air Excel Serv. Corp.*, 171 AD3d 1026, 1028 [2d Dept 2019] [internal citation omitted]).

**152361/2018   LEON, JONATHAN vs. DDG 100 FRANKLIN LLC**
**Motion No.  004 005**

**Page 7 of 18**

7 of 18

As an initial matter DDG argues that Industrial Code section 23-1.25, which concerns welding and flame cutting operations, is inapplicable. Plaintiffs do not address or rebut this point, so the Court dismisses this section and will focus on sections 23-1.7 and 23-1.8.

Industrial Code section 23-1.7(e)(2) states in part that "[t]he parts of floors, platforms and similar areas where persons work or pass shall be kept free from accumulations of dirt and debris and from scattered tools and materials and from sharp projections insofar as may be consistent with the work being performed."

DDG claims that plaintiff was the sole proximate cause of his accident, as plaintiff testified that he had moved the debris that he eventually stumbled over a few feet away from the hole. Plaintiffs counter that plaintiff is not responsible by virtue of moving the debris away, and that even if he is, this amounts to a comparative negligence defense which does not preclude summary judgment on liability in favor of plaintiff. Plaintiffs also argue that DDG's alleged constructive notice of the debris defeats a sole proximate cause defense.

The Court finds that there was a violation of Industrial Code Provision 23-1.7(e)(2). The part of the floor where plaintiff was working was not kept free from accumulations of debris. DDG did not meet its burden to establish that plaintiff was the sole proximate cause of his own accident. That plaintiff may have some comparative negligence is not a basis to grant DDG's motion or to deny plaintiff's cross-motion (*Treu v Cappelletti*, 71 AD3d 994, 998, 897 NYS2d 199 [2d Dept 2010] [observing that a plaintiff's purported comparative negligence did not absolve the defendant of liability under Labor Law § 241(6)]).

Industrial Code section 23-1.8(a) states in part that "[a]pproved eye protection equipment suitable for the hazard involved shall be provided for and shall be used by all persons while employed in welding, burning or cutting operations or in chipping, cutting or grinding any

152361/2018   LEON, JONATHAN vs. DDG 100 FRANKLIN LLC
Motion No.  004 005

Page 8 of 18

material from which particles may fly, or while engaged in any other operation which may endanger the eyes."

Plaintiff, whose eye was damaged resulting in an alleged partial loss of vision, was not wearing goggles at the time of the accident. He testified that he was not provided goggles and that there were no goggles in the Forward Mechanical gang box (NYSCEF Doc. No. 231, at 53-56). Joseph Milohnic, part owner of Forward, testified that all of Forward's employees always received glasses, and they were supposed to be wearing them at all times (NYSCEF Doc. No. 233 at 27). Anthony Milohnic, another part-owner of Forward, testified that generally the type of equipment Forward would provide included "[v]est, goggles, something – yes. That was basically it" (NYSCEF Doc. No.234 at 31). However, when asked specifically about the goggles, Anthony Milohnic stated that he did not remember purchasing goggles for the 100 Franklin Street project, he did not have any receipts or purchase orders for the goggles, that nothing was placed in writing that would detail that goggles were present, that he did not know what type of goggles they were or where he would have purchased them, and he did not know if anyone would have supplied 100 Franklin Street with goggles for Forward employees to use (*id.* at 49-50). Anthony Milohnic further testified that he did not know if plaintiff had been offered any goggles to use, or if plaintiff was made aware that goggles were available (*id.* at 54).

DDG's argument centers around the contention that plaintiff was the sole proximate cause of his accident, as he chose to look into the hole despite it not being strictly necessary and despite the fact that he was not specifically instructed to look through the hole. Plaintiff disagrees and argues that even if plaintiff bears any responsibility for his injuries, comparative fault is not necessary for a Court to impose liability at the summary judgment stage.

**152361/2018   LEON, JONATHAN vs. DDG 100 FRANKLIN LLC**
**Motion No.  004 005**

**Page 9 of 18**

9 of 18

[* 9]

The Court finds that Industrial Code section 23-1.8(a) was violated. Mr. Leon testified that he was not provided glasses or goggles and did not know of any that were available to him. This testimony is uncontradicted. Forward's part-owner Joseph Milohnic admitted that all workers should have been wearing protective eyewear, yet was unable to prove and did not even specifically allege that Mr. Leon was provided with protective eyewear. As noted above, to the extent that plaintiff may have some comparative fault for looking into the hole without wearing proper protection, that does not absolve DDG of its liability for violating this Industrial Code section.

Contractual Indemnification as to Extreme

DDG seeks summary judgment for contractual indemnification in MS 004. Extreme opposes and moves for summary judgment dismissing DDG's claim for contractual indemnification in MS 005.

"In contractual indemnification, the one seeking indemnification need only establish that it was free from negligence . . . Whether or not the proposed indemnitor was negligent is a non-issue and irrelevant" (*Correia v Professional Data Mgt., Inc.*, 259 AD2d 60, 65, 693 NYS2d 596 [1st Dept 1999]).

Extreme does not dispute that the parties had an indemnification provision in the relevant contract. Extreme claims, however, that the fifth floor was no longer an Extreme working floor, and the responsibility to clean up the debris therefore fell on DDG. On the other hand, DDG claims that Extreme created the debris, that the fifth floor was an Extreme working floor at the time of the accident, and it was therefore Extreme's responsibility to keep the floor free from debris. The relevant part of the contract states that at the time of the floor turn over, "[a]ll

**152361/2018   LEON, JONATHAN vs. DDG 100 FRANKLIN LLC**
**Motion No.  004 005**

**Page 10 of 18**

10 of 18

[* 10]

protection, cleaning, etc. is the responsibility of [Extreme] until the floor has been signed off by [DDG]. At that time maintenance of protection and debris removal becomes the responsibility of [DDG]. Sign-off and acceptance requires a broom swept floor…" (NYSCEF Doc. No. 174 at 30).

In support of the contention that the fifth floor was an Extreme working floor, DDG points to the deposition of Waylon DeCanio, part owner of Extreme. The relevant part of Waylon DeCanio's testimony revolves around two pictures that he took, one from March 6, 2018 (six days before the accident) and the other from March 16, 2018 (four days after the accident) which are attached at NYSCEF Doc. No. 212. Both photos are taken from street level, and both photos show that the first five floors have orange safety netting secured around the perimeter. In his deposition, Waylon DeCanio indicates that, based on the photos, the fifth floor was an Extreme working floor on March 6, 2018, and was still an Extreme working on March 16, 2018 due to the presence of two-by-fours throughout the entire fifth floor and the fact that the four lower floors have metal cables running between the columns to which the netting is attached for safety, indicating that the floor has been handed over (NYSCEF Doc. No. 200 at 36-42, 89). DDG also points to the deposition of Gary DeCanio, the president of Extreme (NYSCEF Doc. No. 195 at 92-94, 124) and of Waylon DeCanio (NYSCEF Doc. No. 200 at 27-28 and 105-108) where both witnesses testify that Extreme's work created concrete and wood debris.

Extreme disputes that the accident was caused by, arising out of, resulting from, or occurring in connection with its work, and that the indemnification clause is therefore not applicable.

Extreme points to Waylon DeCanio's affidavit which was prepared in support of Extreme's motion for summary judgment dismissing DDG's claim for contractual

**152361/2018   LEON, JONATHAN vs. DDG 100 FRANKLIN LLC**
**Motion No.  004 005**

**Page 11 of 18**

11 of 18

indemnification at NYSCEF Doc. No. 150. There, based on different photos that Waylon DeCanio allegedly took on March 16, 2018 and attached at NYSCEF Doc. No. 179, Waylon DeCanio concludes that the photographs show about two days of work performed by masonry contractors and that before the masonry contractors can work on any floor, Extreme would have to hand the floor over to DDG; DDG would then have to provide updated drawings which "could take a day or more," that the mason would have to mobilize its materials which would also take at least a day, and that therefore, the masonry contractor began their work, on the fifth floor, on March 12, 2018, "or prior to that" and Extreme did not have control over the fifth floor since at least March 12, 2018, the day of plaintiff's accident (NYSCEF Doc. No. 150 at ¶¶ 25-32). Based on Waylon DeCanio's affidavit and these photos, Extreme claims that the debris may have been created by the masonry contractors and that it is therefore only speculation that the debris plaintiff allegedly tripped over was created by Extreme.

In reply, DDG says that it is not speculation that the concrete debris was created by Extreme, as Extreme performed all concrete work on the premises, that Extreme was solely responsible for cleanup until the floor was turned over to the construction manager and other trades. DDG says that Waylon DeCanio's affidavit is "self-serving," contradicts his deposition testimony, and that the affidavit should therefore be disregarded and is insufficient to raise a question of fact (NYSCEF Doc. No. 280).

Forward points out in opposition to Extreme's MS 005 that the meeting minutes from the following day, March 13, 2018 (NYSCEF Doc. No. 244), show that Extreme still had not poured the concrete on the sixth floor. Forward also raises the issue of Mr. DeCanio's knowledge of the masonry timelines. Forward further points out that in Waylon DeCanio's deposition, he stated that Extreme kept daily logs of when the floors were turned over (NYSCEF Doc. No. 171 at

**152361/2018   LEON, JONATHAN vs. DDG 100 FRANKLIN LLC**
**Motion No.  004 005**

**Page 12 of 18**

12 of 18

pages 83-84). Forward then claims that Extreme did not produce these records despite request. True, Forward's opposition was submitted late; Extreme, however, had the time to put in a reply to Forward's opposition – in which Extreme did not refute this allegation and did not provide proof of turnover – only arguing that the Court should not consider Forward's opposition since it was untimely.

The Court grants the branch of DDG's motion that seeks contractual indemnification from Extreme. If there was a turnover of the fifth floor from Extreme to DDG, then it was Extreme's burden to produce proof that there was such a turnover. Here, Extreme wholly failed to do so. In fact, Extreme did not point to any documents, such as the logs highlighted by Mr. DeCanio at his deposition, that show that there was a sign off and acceptance as required by the parties' contract.

Extreme did not claim that the documents proving Extreme turned over the fifth floor to DDG were destroyed in a fire or flood or otherwise lost. The facts on this motion show that Extreme was doing concrete work, that there was concrete debris left in the immediate area where plaintiff was working (which required plaintiff to move it away from his work area) and when he got hit in the face, he stumbled away from his immediate work area and tripped over the concrete debris. If Extreme had already turned over the fifth floor, then it was Extreme's burden to show it with specific proof. Instead, Extreme only offered innuendo that the pictures showed masonry work which means that therefore Extreme had turned over the floor and that the masons may have caused the debris. Of course, these arguments were not raised at any of the depositions for Extreme and they cannot be raised for the first time in an affidavit opposing the instant motion to raise an issue of fact.

**152361/2018   LEON, JONATHAN vs. DDG 100 FRANKLIN LLC**
**Motion No.  004 005**

**Page 13 of 18**

DDG's Claim for Common-Law Indemnification from Extreme

"In order to establish a claim for common-law indemnification, a party must prove not only that [it was] not negligent, but also that the proposed indemnitor ... was responsible for negligence that contributed to the accident (*Zubaidi v Hasbani*, 136 AD3d 703, 704, 136 NYS3d 202 [2d Dept 2016]).

For the reasons stated above, the Court grants this branch of DDG's motion against Extreme. The fact is that Extreme was, at least on this record, still on the subject floor and it did not raise anything other than mere speculation that the debris was from a different subcontractor.

DDG's Claim Against Extreme for Breach of Contract for Failure to Procure Insurance

DDG's contract with Extreme obligated Extreme to procure a commercial general liability policy in the amount of $5,000,000 (satisfied through primary and excess coverage), naming, DGG 100 as an additional insured. DDG argued that Extreme failed to provide evidence of procurement of the required primary and excess policies.

Extreme counters that it did procure the insurance as required by the contract and attaches copies of the primary and excess policies at NYSCEF Doc. Nos. 177 and 178. Extreme moves to dismiss DDG's claim against Extreme for failure to procure insurance in MS 005. DDG did not reply to Extreme's opposition to this part of its motion under MS 004 and does not oppose the part of Extreme's motion to dismiss this claim under MS 005. The Court therefore denies DDG's motion seeking summary judgment for breach of contract for failure to procure insurance under MS 004 and grants the part of Extreme's motion seeking to dismiss this claim under MS 005. In other words, Extreme demonstrated that it procured the proper insurance.

**152361/2018   LEON, JONATHAN vs. DDG 100 FRANKLIN LLC**
**Motion No.  004 005**

**Page 14 of 18**

DDG's Claim for Contractual Indemnification Against Forward

DDG claims that it is entitled to contractual indemnification from Forward to the extent the insurance policies issued to Forward which provide additional coverage to DDG are exhausted. It is undisputed that Forward's contract also contains an indemnification provision for work that arises out of, results from, or occurs in connection with the work performed by Forward unless the accident is shown to be the result of the sole negligence of DDG (NYSCEF Doc. No. 210 at 10).

Forward claims that it has not been demonstrated that Forward violated the Industrial Code or that or that the violation was a proximate cause of plaintiff's injuries and agrees with DDG that plaintiff was the sole proximate cause of his accident.

Mr. Leon testified that he was not provided glasses and did not know of any that were available to him. This testimony is uncontradicted. Forward's part-owner Joseph Milohnic admitted that all workers should have been wearing protective eyewear, yet was unable to prove and did not even specifically allege that Mr. Leon was provided with protective eyewear. As a result of being struck in the face without protective eyewear, Mr. Leon has permanent damage to his vision. Therefore, the Court finds that Forward violated Industrial Code 23-1.8 which was the proximate cause of at least some of plaintiff's injuries – his vision loss.

Furthermore, Forward was performing the work on the pipe, and the pipe should have been depressurized. Since the accident clearly arose out of the work being performed by Forward and was not solely caused by DDG's negligence, the Court grants the part of DDG's motion seeking summary judgment for contractual indemnification from Forward to the extent the insurance policies issued to Forward which provide additional coverage to DDG are exhausted.

**152361/2018   LEON, JONATHAN vs. DDG 100 FRANKLIN LLC**
**Motion No.  004 005**

**Page 15 of 18**

[* 15]

<u>Counterclaims against DDG for Common-Law Indemnification or Contribution</u>

DDG moves to dismiss Extreme's and Forward's counterclaims against DDG seeking common-law indemnification and contribution.

Based on the analysis above, the Court finds that Extreme was still in control of the floor, and therefore the Court dismisses Extreme's indemnification and contribution claims against DDG.

As to Forward's claims for common-law indemnification, it is clear that Forward cannot show that DDG's negligence was the sole cause for plaintiff's injury when it was Forward's workers who failed to depressurize the pipe, and where Forward has not rebutted plaintiff's assertion that Forward failed to provide him with protective eyewear. The Court therefore grants the part of DDG's motion seeking to dismiss Forward's claims for common-law indemnification and contribution.

**Summary**

The Court denies the part of DDG's motion seeking to dismiss plaintiffs' causes of action pursuant to Labor Law § 200 and for common-law negligence. The Court grants plaintiffs' cross-motion pursuant to Labor Law § 241(6) on liability only – the Court finds that Industrial Code provisions §§ 23-1.7 and 1.8 were violated, and that DDG, as owner, is therefore liable. The Court therefore denies the part of DDG's motion seeking to dismiss plaintiffs' Labor Law § 241(6) claim.

The Court grants summary judgment on DDG's claim for contractual and common-law indemnification as to Extreme and therefore denies the part of Extreme's motion seeking to dismiss DDG's claims for contractual and common-law indemnification and contribution against

**152361/2018   LEON, JONATHAN vs. DDG 100 FRANKLIN LLC**                    **Page 16 of 18**
**Motion No.  004 005**

16 of 18

Extreme. The Court grants the part of DDG's motion seeking to dismiss Extreme's claim for common-law indemnification and contribution against DDG.

The Court dismisses DDG's claim against Extreme for breach of contract for failure to procure insurance as Extreme provided copies of the policies.

The Court grants DDG's claim for contractual indemnification against Forward as described above; the evidence clearly shows that plaintiff's damages resulting from the bursting pipe and the lack of eye protection arose out of Forward's work, which was the contractual trigger for DDG to be indemnified by Forward.

Lastly, the Court grants the part of DDG's motion seeking to dismiss Forward's claim for common-law indemnification and contribution against DDG; the evidence clearly shows that DDG's negligence was not the sole cause of plaintiff's accident regarding the bursting pipe and lack of eye protection.

Accordingly, it is hereby

ORDERED that the part of DDG's motion seeking to dismiss plaintiffs' causes of action pursuant to Labor Law § 200 and for common-law negligence is denied; and it is further

ORDERED that plaintiffs' cross-motion seeking summary judgment against DDG on plaintiffs' claim pursuant to Labor Law § 241(6) based upon the violation of Industrial Code §§ 23-1.7 and 23-1.8 is granted as to liability only; and it is further

ORDERED that the part of DDG's motion seeking to dismiss plaintiffs' Labor Law § 241(6) claim is granted to the extent that plaintiffs' claim relied upon the violation of Industrial Code § 23-1.25 and is otherwise denied; and it is further

**152361/2018   LEON, JONATHAN vs. DDG 100 FRANKLIN LLC**
**Motion No.  004 005**

**Page 17 of 18**

17 of 18

ORDERED that the parts of DDG's motion seeking summary judgment on its claims of contractual and common-law indemnification against Extreme are granted; and it is further

ORDERED that the parts of DDG's motion seeking to dismiss Extreme's claims for common-law indemnification and contribution against DDG are granted; and it is further

ORDERED that the parts of Extreme's motion to dismiss DDG's claims of contractual indemnification and common-law indemnification and contribution are denied; and it is further

ORDERED that the part of Extreme's motion seeking to dismiss DDG's cause of action for breach of contract for failure to procure insurance against Extreme is granted; and it is further

ORDERED that the part of DDG's motion seeking summary judgment on its claim for breach of contract for failure to procure insurance against Extreme is denied; and it is further

ORDERED that the part of DDG's motion seeking summary judgment on its claim for contractual indemnification against Forward is granted; and it is further

ORDERED that the part of DDG's motion seeking to dismiss Forward's claim for common-law indemnification and contribution against DDG is granted.

| | | | | |
|---|---|---|---|---|
| **6/9/2025** | | | | |
| **DATE** | | | **ARLENE P. BLUTH, J.S.C.** | |
| **CHECK ONE:** | | CASE DISPOSED | X | NON-FINAL DISPOSITION |
| | | GRANTED | DENIED | X GRANTED IN PART | OTHER |
| **APPLICATION:** | | SETTLE ORDER | | SUBMIT ORDER |
| **CHECK IF APPROPRIATE:** | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

**152361/2018   LEON, JONATHAN vs. DDG 100 FRANKLIN LLC**
**Motion No.  004 005**

Page 18 of 18

18 of 18